JOHN B. WHITE, PETITIONER-APPELLANT, v. ATLANTIC CITY PRESS, A/K/A PRESS PUBLISHING COMPANY, A DIVISION OF ABARTA CORP., RESPONDENT-RESPONDENT.

Argued October 10, 1973—Decided December 19, 1973.

*Mr. Morton Feldman* argued the cause for petitioner-appellant.

*Mr. James D. Carton, III* argued the cause for respondent-respondent (*Messrs. Carton, Nary, Witt & Arvanitis,* attorneys).

The opinion of the Court was delivered by

PASHMAN, J. On the morning of April 13, 1971, petitioner John B. White, while driving his automobile to work, picked up two young hitchhikers. They returned his favor by committing acts of felonious assault and robbery upon him. Petitioner filed a workmen's compensation benefits claim pursuant to *N. J. S. A.* 34:15–7. Atlantic City Press, employer-respondent, denied compensability for three reasons. First, it contended that no employment relationship existed; second, that the going and coming rule precludes recovery should such relationship be found; and, third, that the picking up of a hitchhiker relieves an employer of liability even if the accident were otherwise compensable. The Judge of Compensation found for petitioner on the first two issues, but felt constrained to rule against him on the third, on the authority of *Beh v. Breeze Corporation,* 2 *N. J.* 279 (1949). He therefore dismissed the petition and the Appellate Division affirmed in an unreported *per curiam* opinion. We granted certification, 63 *N. J.* 497 (1973). We take this opportunity for a fresh look at the hitchhiker doctrine. We reverse.

Petitioner alleges that at the time of the accident, he had been working as a route delivery man, having begun that work in January 1971. His duties encompassed driving a few miles from his residence in Alantic City to Pleasantville, picking up for delivery 200 of respondent's newspapers, and then delivering them. He would load the daily edition of respondent's papers in his car and drop them off individually by throwing a copy on a customer's front porch or lawn or inserting one in a post box, along a scattered route of 20 to 25 miles in rural Atlantic County. Each morning by 7:00 A.M., the route deliveryman's function would be completed.

Petitioner testified that on the eventful morning of April 13, 1971, he left his home around 5:00 A.M., his usual time, and while still in Atlantic City not too far from his own residence, he picked up two hitchhikers who wanted to be taken to a bus station. Petitioner added that he had never encountered or known of harmful incidents in all the times he picked up hitchhikers. The drive to the bus station necessitated a detour of several blocks from petitioner's customary route but as was evidenced, no appreciable time would have been lost since one could get to Pleasantville by several alternative express roads. While waiting at a red light, one of the hitchhikers pulled a knife and demanded petitioner's money. A fight ensued, and with White losing control, his automobile bounced against several parked cars. Petitioner was hospitalized with lacerations and stab wounds in the face, abdomen and hand, and the assailant was taken into police custody. Petitioner resumed his work a week later.

Respondent denied that it had employed petitioner as a route deliveryman at the time of the accident. Testimony elicited from two circulation managers indicated a non-existence of any formal agreement with petitioner relative to delivery duties. Respondent acknowledged, however, that petitioner was authorized to make weekly collections and to verify the route, and that for this service, he would receive a 15% commission. It was respondent's understanding that

petitioner would take over the route in its entirety in the future, but as a precondition, he had to serve an apprenticeship. Hence, from January until June 1971, at which time a formal agreement was signed, petitioner had no formal status as an independent deliveryman. There were no records in respondent's home office showing that petitioner was delivering newspapers at all.

Respondent did not pay petitioner directly for deliveries. Instead, it paid $50 weekly to the person with whom it had originally contracted for the delivery, one La Compt, who had in fact turned over the job to White in February 1971 and endorsed all checks to him from that date forward. Respondent claims it was never notified of this transfer; but White testified he commenced the delivery at the request of circulation manager Attig who met him several days at the paper pickup point.

There was testimony that in addition to Attig, one of the other circulation managers, several of the office employees and most of the deliverymen were familiar with White's deliveries. The day following the accident, the Press in a news account reported the knifing incident and identified White as a Press employee. It thus appears that if White's testimony is credited, he had been employed in a *de facto* status at the time of the accident.

The judge of compensation determined that in the event petitioner should prevail on appeal, he would be entitled to hospital costs of $195 and permanent disability benefits of $1,100. These supplementary findings were made to obviate the need for remand in the event of reversal.

I

 Respondent contends at the threshold that petitioner was not in its employ as a deliveryman at the time of the accident. And it urges that judgment be sustained on that basis, if no other. Contrary findings, however, were made below. On this record, we accept them.

The judge of compensation found generally there was an employment relationship. This could have been based upon acceance of White's testimony that he and Attig agreed in January 1971 that he would perform the delivery service and that he did so thereafter. However, no such express finding of fact was made by the judge. Nevertheless, a proper finding of employment relationship could also have been based upon a determination that respondent knew at all material times that White was in fact making the deliveries and that it was of no legal consequence that payment was made indirectly through La Compt. The contract of employment may be express or implied. See *Essbee Amusement Corp. v. Greenhaus*, 114 *N. J. L.* 492, 495 (Sup. Ct. 1935) ; *Del Peso v. H. A. Bar and Restaurant Co.*, 75 *N. J. Super.* 108, 117 (App. Div.), certif. den. 38 *N. J.* 309 (1962) ; *Biger v. Erwin*, 108 *N. J. Super.* 293 (Cty. Ct.), *aff'd* 57 *N. J.* 95 (1970) ; 99 *C. J. S. Workmen's Compensation* § 65, pp. 280–281 (1958). In this regard, the actual trial fact finding was that "respondent through its employees either knew or should have known that White was distributing Rt. 3901 regularly for some period of time prior to April 3, 1971."

Insofar as either of the factual hypotheses aforesaid may be viewed, as we here hold, as a proper legal foundation for the ultimate conclusion of employment relationship by the trial court, there was substantial credible evidence in the record in support thereof. Moreover, in our view, the same evidence which supports the express finding of the Judge aforementioned that respondent knew or should have known of the distribution by White also supports and justifies a finding of actual knowledge by respondent. In the interest of a just and expeditious conclusion of this litigation, we exercise our original jurisdiction and so find, *R.* 2:10–5, rather than remand for a more specific finding on the point.

The rule of appellate review of factual findings prior to the amendment of the Workmen's Compensation Act eliminating the county court in the review process, *L.* 1971, *c.* 463, amending *N. J. S. A.* 34:15–66, was as stated in *Close*

*v. Kordulak Bros.*, 44 *N. J.* 589, 599 (1965), *i. e.*, when the findings could reasonably have been reached on sufficient credible evidence present in the whole record after giving due weight to the judge's expertise in the field and his opportunity of hearing and seeing the witnesses, those findings will be sustained. In *De Angelo v. Alsan Masons, Inc.*, 122 *N. J. Super.* 88 (App. Div.), *aff'd* 62 *N. J.* 581 (1973), it was held that notwithstanding the amendment of the statute, the rule of substantial credible evidence would continue in effect applying directly to the judgment in compensation as the ruling under review.

In view of the substantiality of the evidence discussed above in support of either of the alternative factual findings of the Judge of Compensation which we have mentioned, we affirm the conclusion of employment relationship arrived at below.

## II.

■■ We have concluded that the going and coming rule does not preclude a holding that the accident is compensable. It is axiomatic that exceptions to the rule have been so numerous that they have almost swallowed the rule. See *e. g., Hammond v. Great Atlantic & Pacific Tea Co.*, 56 *N. J.* 7 (1970) at 11–13 and cases cited therein. The facts in the instant case fit well within one of the categorical exceptions: when employee uses his own automobile for work-related purposes and benefits both himself and employer. Where, as here, the nature of the employment reasonably requires the use of the automobile as soon as the employee leaves his home, compensability attaches at that moment. In *Demerest v. Guild*, 114 *N. J. L.* 472 (E. & A. 1934), employee was instructed to and compensated for use of her automobile for employment related activity. Because she lived in Dunellen, but was required to report first each day to employer's home office in Union City, and because there existed no public transportation via this route, use of her

own car to arrive at work was considered integral to the fulfillment of employment. Compensation was awarded when employee met an accident on the way home after her regular employment duties ceased. Parallel to the case before us, use of petitioner's car going to and coming from work was indispensable for employment and conferred a benefit upon employer. It is inconceivable to suppose that newspaper delivery can be effectuated by any means other than a car over a route containing 200 homes spaced apart in a rural section of Atlantic County. Equally as incomprehensible is how to divorce the delivery aspect, with the loading and transporting of the automobile to the loading dock. That petitioner would leave his car at the loading station upon termination of delivery and step into a second vehicle to go and come from work is a preposterous assumption. The time has since long gone when a delivery route such as the one involved herein has been tended by one on horseback or a lad on a bicycle. In sum, the use of the car was both a necessity as well as an established practice, regularly used in connection with employment. In *Begley v. Inter. Terminal Operating Co., Inc.*, 114 *N. J. Super.* 537 (Cty. Ct. 1971), certif. den. 61 *N. J.* 155 (1972), the court said:

> Her right to compensation rests upon the principle that whenever an employee, because of contract, necessity, express permission or established and accepted practice, uses his car regularly or frequently in connection with his employment and for the employer's benefit, he is within the scope of his employment when transporting the car to and from the place of employment in order to have it available for such use.

We deem this an accurate statement of the controlling principle and find it apposite in this case.

### III.

In *Beh v. Breeze Corporation, supra,* a traveling salesman while driving his car on business for his employer, picked up a hitchhiker during a snowstorm. After stopping for

lunch and resuming the journey the passenger attempted to rob the employee at gunpoint and killed him when the latter resisted. The matter of picking up hitchhikers had not been a subject of discussion between employer and employee. The former Supreme Court granted compensation to the decedent's widow, 137 *N. J. L.* 431 (1948), pointing out that the act is broad, providing for compensation where the accident or death arises out of and in the course of the employment, except where intentionally self-inflicted or when intoxication is the natural and proximate cause of injury. It declared (at 433):

> We find that the death arose from a risk incidental to the employment and was causally connected. therewith because it arose from a risk or hazard incident to the use of the highway. The employee, if he had not stopped for the hitch-hiker, might have been shot anyway. That is one of the risks of travel.

The present Supreme Court reversed. Conceding that the accident had arisen in the course of the employment, it held it had not arisen out of the employment. The Court reasoned that picking up hitchhikers was not within the employee's express duties nor necessary to their accomplishment; the peril was separable from the employee's line of duty; his duties did not expose him to the danger except through his independent act; and there was no causal connection between the accident and the conditions attending the transaction of the employer's business (2 *N. J.* at 283). The accident was not "directly" attributable to a risk of the highway to which the decedent's employment exposed him since injuries from an unknown assailant riding as a guest of the driver were not an "ordinary" risk of the highway." (*Id.*). The court viewed the pickup as a "charitable incident for the accommodation of the hitch-hiker" from which the employer derived no benefit. (*Id.*). Such conduct constitutes a "self imposed" risk, is commonly known to be dangerous, and is not within the contemplation of the employer at the time of hiring. (2 *N. J.* at 284).

■ We think it clear that the development of the concept of "arising out of the employment" by the decisions of our courts since *Beh* was decided in 1949 is in sharp divergence from the philosophy of that decision as just summarized. The gravamen of *Beh* is the enlargement of the risks of the employment by voluntary action of the employee beyond those in contemplation by the employer at the time of hiring. However, foreseeability of the incidence of a particular kind of injury to an employee has always been regarded as immaterial in the rationale of compensation law. *Larson, Workmen's Compensation Law,* § 6.50, at 3–7, 3–8 (1972) ; *Gargiulo v. Gargiulo,* 13 *N. J.* 8 (1953). The concept of foreseeability is in the domain of tort law, where fault characteristically plays a role — not in that of workmen's compensation to which it is irrelevant. *Secor v. Penn Service Garage,* 19 *N. J.* 315, 319 (1955). The fundamental issue in the latter area is work-connection, *Larson,* op. cit., at 3–8, and that must be the fulcrum of our inquiry here.

Moreover, the emphasis in *Beh* on the invitation by the employee of the hitchhiker as creative of a "self-imposed risk," as opposed to a "risk of the highway," (2 *N. J.* at 284) also clashes with the principle that fault of the employee is basically immaterial in compensation law. Contributory negligence is of course not a defense, and the act carefully delimits the bar of fault, as such, solely to the categories of intentional self-infliction of harm and intoxication as the sole and proximate cause of injury. *N. J. S. A.* 34 :15–7.[1]

■ The fountainhead of the inquiry here lies in the question whether the hazard giving rise to petitioner's injury was a "risk that grows out of or is connected with what a workman has to do in fulfilling his contract of service" —

---

[1]While the language of the act reads, "when intoxication is the natural and proximate cause of injury," the cases hold it must also be the sole cause. *Olivera v. Hatco Chemical Co.,* 55 *N. J. Super.* 336, 350 (App. Div.), certif. den. 30 *N. J.* 557 (1959).

a risk which may be "ordinary" or "extraordinary in character, indirectly connected with the employment because of its special nature." *Belyus v. Wilkinson, Gaddis & Co.,* 115 *N. J. L.* 43, 47 (Sup. Ct. 1935), *aff'd* 116 *N. J. L.* 92 (E. & A. 1936). But the risk is not beyond the purview of employment connection merely because it is heightened by an act of the employee otherwise within the course of the employment, which might be described as "foolhardy," "negligent," or "foolish," see *Green v. De Furia,* 19 *N. J.* 290, 297 (1955); or as a "grossly negligent" act of "mock bravado," see *Secor v. Penn Service Garage, supra* (19 *N. J.* at 323–324); and see *Diaz v. Newark Industrial Spraying, Inc.,* 35 *N. J.* 588 (1961).

In *Secor, supra,* where a gasoline-drenched attendant at a service station, disregarding his employer's direction to change his uniform for the sake of safety, lit a match near his trouser's leg to show that the change was unnecessary and consequently was severely burned, the court allowed recovery as against the employer's contention that the injury resulted from "actions committed by [the employee] not in the course of employment." Speaking for the Court majority, and assuming *arguendo* that the employee had acted in a spirit of "mock bravado" Justice Jacobs said (19 *N. J.* at 324):

> An employee is not an automaton, and, even when he is highly efficient, he will to some extent deviate from the uninterrupted performance of his work. Such deviation, if it be considered minor in the light of the particular time, place and circumstance, is realistically viewed by both the employer and the employee as a normal incidence of the employment relation and ought not in this day be viewed as legally breaching the course thereof. Fulfillment of the high purposes of our socially important and ever broadening Workmen's Compensation Act suggests this approach and nothing in the statutory term dictates any narrower position.

In similar vein is the rationale of our decision in *Diaz v. Newark Industrial Spraying, Inc., supra,* where we allowed compensation to an employee who, by repeatedly squirting

water on a fellow-employee, provoked the latter into throwing at him what was thought to be water but turned out to be a flammable lacquer thinner, which took fire and burned the skylarking petitioner. Although the employer had no prior knowledge of this kind of frolicking by the employees, cf. *McKenzie v. Brixite Mfg. Co.*, 34 *N. J.* 1 (1961), recovery was nonetheless granted. We said that "the case requires the application of a realistic view of reasonable human reactions to working conditions and associations with people encountered in the course of employment" (35 *N. J.* at 590) ; further that in this general area, "the center of inquiry has shifted from insulating the particular act in a vacuum to considering it in the entire nature of the employment, including the risks of human associations and failings and conditions inseparable from the specific work" (at 591).

It is in the spirit of such counsel that we must seek the answer to the specific problem which is of present concern. Obviously robbery and assault on a highway are potential hazards of traveling thereon by automobile. *Geltman v. Reliable Linen & Supply Co.*, 128 *N. J. L.* 443 (E. & A. 1942). But for the performance by petitioner of his duty to drive to the pickup point in Pleasantville for the newspapers, he would never have encountered the assailants. The analysis thus devolves to the question whether petitioner's succumbing to the instinct of aid to the beckoning couple constituted a "reasonable human reaction," in the language of *Diaz, supra,* even if, *arguendo,* "foolhardy" or "grossly negligent." We entertain no doubt that it was such a reaction. It is an act which occurs countless times on the streets and highways, and in the vast majority of instances without harm. The question is not whether it is a prudent act or a commendable one. As noted in the cases cited above, the reasonably expectable range of conduct of workmen in the employment milieu can run the entire gamut from the grossly careless, imprudent, or foolhardy, to the opposite of those characteristics. The teaching of the *Secor* line of cases is that if the circumstances of the employment can be fairly said to have

elicited conduct by the employee which results in his injury, absent what a court would conclude to be substantial deviation from the course of the employment, compensation ordinarily follows regardless of how one might assess such conduct in terms of prudence, judgment, wisdom or human frailty.

We regard the foregoing criteria as here met. The employer placed the petitioner on the highway, and he was thereby subjected to the hazard, albeit apparently not appreciated by him, of encounter with those who were able to entice him, as they could have many others in similar circumstances, to give them a lift. We hold there was work-connection sufficient to render the ensuing injuries such as arose out of the employment.[2]

It is of interest that long before the decision in *Beh,* recovery was allowed in a hitchhiker case in *Goodwin v. Omaha Printing Co.,* 131 *Neb.* 212, 267 *N. W.* 419 (Sup. Ct. 1936). The employee, a traveling salesman, was killed as he stopped to let out the hitchhiker. The Nebraska court recognized the hazard of highway robbery and the peril apprehended by an employee whose travels for business purposes render a special benefit to employer. *Goodwin* rebutted the contention that the employee brought the accident upon himself by choosing to pick up the hitchhiker. No instructions were given by the employer, nor were hitchhiking assaults so frequent as to put employee on notice. Robbery might have occurred in a variety of ways, regardless of employee's invitation. Merely because the employee initiated this charitable act, the Court added, he is not removed from the employment posture, nor does he act for his own pleasure. The opinion of the Ne-

---

[2]Needless to say, our determination herein does not reflect approval of hitchhiking, which if practiced from the highway itself, is a statutory offense, *N. J. S. A.* 39:4–59, or of the picking up of hitchhikers by motorists. However, a driver violating the statutory directions for careful driving would of course not be denied workmen's compensation if otherwise entitled thereto.

braska Supreme Court substantially anticipated the analysis which has led to our determination of the instant case. A generally cognate viewpoint has been taken in other cases involving invitations to ride by the employee-driver to new acquaintances. See *Hunt v. Gutzwiller Baking Co.,* 104 Ind. App. 209, 9 *N. E. 2d* 129 (1937); *Connor Co. v. Industrial Commission,* 374 Ill. 105, 28 *N. E. 2d* 270 (1940).

In light of the foregoing conclusions, we need not be detained long by the argument that picking up hitchhikers was a disqualified deviation from the employment. The detour involved was only a few blocks, led to an alternative main route to Pleasantville, and would have taken only a few minutes longer. It was not by any means a serious deviation in terms of comparison with other fact situations we have held not to be fatal to recovery. See *e. g., Rainear v. Rainear,* 63 *N. J.* 276 (1973) and cases cited therein.

For the reasons stated we conclude that *Beh v. Breeze Corporation, supra,* should be and is herewith overruled.

Judgment reversed.

*For reversal*—Acting Chief Justice JACOBS, Justices SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—5.

*For affirmance*—None.