MARLENE LIVINGSTONE, PETITIONER–RESPONDENT, v.
ABRAHAM & STRAUS, INC., RESPONDENT–APPELLANT.

Argued February 17, 1988—Decided June 30, 1988.

*Robert G. Bressler* argued the cause for appellant.

*Charles H. Mandell* argued the cause for respondent (*Rothstein, Mandell, Strohm & Gelson,* attorneys; *John F. Gelson,* of counsel; *Scott J. Basen,* on the brief).

The opinion of the Court was delivered by

STEIN, J.

In this appeal as of right, *R.* 2:2–1(a), we address for the first time a 1979 amendment to the Workers' Compensation Act codifying the "going and coming" rule of workers' compensation liability. Respondent, Marlene Livingstone, was injured in the parking lot at the Monmouth Mall on her way to work at appellant, Abraham & Straus, a mall tenant. The Division of Workers' Compensation denied benefits, but a divided Appellate Division reversed, *Livingstone v. Abraham & Straus,* 216 *N.J.Super.* 685 (1987), disagreeing over the application of the 1979 legislation, *N.J.S.A.* 34:15–36, to the facts of this case. We find that respondent's injury resulted from an accident "arising out of and in the course of [her] employment," *N.J.S. A.* 34:15–7, and conclude that it was not the sort of incident the amendment sought to render noncompensable. Hence, we affirm the decision of the Appellate Division directing that benefits be awarded.

## I

Respondent, Marlene Livingstone, began working for appellant, Abraham & Straus, in 1979 at its Eatontown branch, where it is one of four anchor tenants in the Monmouth Mall. In 1981, at the time of the events at issue in this case, respondent worked thirty-seven-and-a-half hours per week combining clerical and sales duties. On the morning of July 14, 1981, respondent drove to work, arriving at roughly 9:30 a.m. She parked in a far corner of the mall parking lot, where all Abraham & Straus employees had been directed to park. As she proceeded from her car to the employees' entrance, respondent was struck by a car driven by a fellow-employee, sustaining injuries for which compensation benefits are now sought.[1]

Appellant neither owns nor rents a *specific* portion of the mall lot for the exclusive use of its customers or employees, but rather, as part of its rental agreement with the mall owner, pays for general access to the mall's parking facilities. Further, appellant has no maintenance responsibilities with respect to any portion of the parking lot.

The directive instructing employees to park at the outermost edge of the mall lot had been issued by appellant in the form of a written notice from the branch operations manager, and was posted at the employees' entrance. These instructions had been in effect during the entire tenure of respondent's employment. The undisputed purpose of the parking directive was to ensure that the closer, more convenient parking spaces remained available for appellant's customers, and thus was entirely for its benefit. According to respondent's undisputed testimony this section of the lot was more than adequate to handle customer

---

[1]Respondent was taken to the Monmouth Medical Center where she was treated for bruises to her back, shoulder, and hips. She missed several months of work and, testifying at her compensation hearing in 1985, stated that she still experienced pain in those areas and that her activities are limited to some extent. No findings were made below with respect to the scope and seriousness of respondent's disabilities, if any.

parking, such that customers never would park in or near the area designated for the employees, except perhaps during the period just before the holidays.

Appellant characterized the directive as an unenforceable request, seeking only its employees' voluntary cooperation. Respondent, however, noted that employees arriving before the store opened would never park in the area reserved for customers, since it would be obvious to management that the cars were not customers', and further asserted that the mandate, in any event, would have been enforced by an Abraham & Straus security guard who would direct non-complying employees to move their cars to the designated location. The compensation judge made no findings on this point, but for purposes of our decision the dispute is immaterial, and we accept appellant's characterization of the directive's implementation.[2]

Respondent filed a claim petition with the Division of Workers' Compensation shortly after the accident. Appellant denied that the employee's injuries were the result of a compensable incident. The compensation judge found in appellant's favor. Citing *N.J.S.A.* 34:15–36, the judge determined that the accident did not arise out of and in the course of employment. He concluded that respondent had not established "actual" or "exclusive" control of the parking lot, and therefore had failed to prove by a preponderance of the evidence that she had suffered

---

[2]The directive itself was not made part of the record, and neither party's evidence concerning its enforceability was wholly conclusive. Respondent testified she had seen the security guard monitoring the parking lot, but conceded neither she nor anyone she knew of had ever been asked to move his or her car. Appellant submitted the testimony of its operations manager, who said he had never been told he had authority to direct people with regard to parking practices, and that if they failed to comply with the request, he could ask them to move but could not have their cars towed if they refused. Appellant's witness, however, began working at the Eatontown branch fifteen months after respondent's accident, and admitted he had no knowledge of the store's maintenance or security practices with respect to the period before that time.

a compensable injury. The relevant portion of the statute states:

Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer; provided, however, when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer; but the employment of employee paid travel time by an employer for time spent traveling to and from a job site or of any employee who utilizes an employer authorized vehicle shall commence and terminate with the time spent traveling to and from a job site or the authorized operation of a vehicle on business authorized by the employer. * * * [*N.J.S.A.* 34:15–36, added by *L.*1979, *c.* 283, § 12.]

The compensation judge added that "at the time of her injury, [respondent] was in an area common to the public from any area leased or controlled by [appellant]."

The Appellate Division, in a split decision, reversed. *Livingstone v. Abraham & Straus, supra,* 216 *N.J.Super.* 685. The court acknowledged that the above-cited provision, enacted in 1979 as an amendment to the Workers' Compensation Act, manifested a clear legislative intent to restrict the compensability of injuries occurring during an employee's trip to or from work. *Id.* at 690. However, Judge Landau, writing for the majority, emphasized the need for a case-by-case approach, taking into account both the general remedial mandate of the Act itself, and the specific objectives underlying the 1979 legislation. *Id.*

The court rejected as too narrow the property-minded interpretation of "control" implicitly employed by the compensation judge:

We think that the inquiry into control, however, cannot rationally end with mere considerations of property law responsibility in those limited situations where, as here, an employer actively extends, or continues, his control over the person of the employee beyond the entrance door. Indeed, if degree of "control" over the property of the parking lot is a meaningful aid in resolving whether an injury has arisen out of and in the course of employment, it must be because such control is deemed to affect indirectly the employee, not because it is an inherent incident of compensability. [*Id.* at 691.]

The majority also reasoned that although the entire lot was open to patrons as well, appellant's employees were subjected to risks in excess of other users because "the hazard of traversing an expansive parking area is a function of the distance between the parking spot and the employer's store." *Ibid.* In sum, the court considered the control exercised over the employees to be the determinative factor, as it noted that in the absence of the parking directive—*i.e.*, had the employees been free to park anywhere in the lot—control would not have been established, thereby precluding compensation under *N.J.S. A.* 34:15-36. *Id.* at 692.

Judge Michels, dissenting, would have affirmed the findings and decision of the compensation judge, concluding that the plain meaning of the statute barred coverage. *Id.* at 693, 695-97. Taking note of the opinion in another workers' compensation case, *Cressey v. Campus Chefs, Div. of CVI Servs., Inc.,* 204 *N.J.Super.* 337 (App.Div.1985), Judge Michels conceded that the statute does not require exclusive control of the area where the accident occurs before compensation is proper. 216 *N.J.Super.* at 696. He argued, however, that respondent had not established control in this case because appellant "did not own, maintain or even have exclusive use of the [parking] area" and had no "power or authority to manage, direct, regulate or supervise [the area]." *Ibid.* Appellant's mere right to use the parking facilities was insufficient, stated Judge Michels, because the "right to use is not equivalent to control." *Ibid.*

By virtue of the dissent, appellant, Abraham & Straus, invoked its entitlement to an appeal as of right in this Court. *R.* 2:2-1(a).

## II

The Workmen's Compensation Act "is humane social legislation designed to place the cost of work-connected injury on the employer who may readily provide for it as an operating

expense." *Hornyak v. The Great Atl. & Pac. Tea Co.*, 63 *N.J.* 99, 101 (1973) (*Hornyak*); *accord Ricciardi v. Damar Prods. Co.*, 45 *N.J.* 54, 60 (1965). It is axiomatic that provisions of the Act have always been construed and applied in light of this broad remedial objective. *See, e.g., Wunschel v. City of Jersey City*, 96 *N.J.* 651, 660 (1984); *Hammond v. The Great Atl. & Pac. Tea Co.*, 56 *N.J.* 7, 12, 14 (1970) (*Hammond*); *O'Brien v. First Camden Nat. Bank & Trust Co.*, 37 *N.J.* 158, 163, 165 (1962); *Cressey v. Campus Chefs, Div. of CVI Servs., Inc., supra*, 204 *N.J.Super.* at 342; *Nemchick v. Thatcher Glass Mfg. Co.*, 203 *N.J.Super.* 137, 143–44 (App.Div.1985); *Buerkle v. United Parcel Serv.*, 26 *N.J.Super.* 405, 408 (App.Div.1953); *Schultz v. Henry V. Vaughans Sons & Co., Inc.*, 24 *N.J.Super.* 492, 499 (Cty.Ct.1953).

The original 1911 legislation contained no definition of employment; rather, the Act simply provided for compensation when employees were injured or killed in accidents "arising out of and in the course of employment." *L.*1911, *c.* 95, § 7 (codified as amended at *N.J.S.A.* 34:15–7); *Wyatt v. Metropolitan Maintenance Co.*, 74 *N.J.* 167, 173 (1977) (Schreiber, Clifford, JJ., dissenting); *Bryant, Adm'x v. Fissell*, 84 *N.J.L.* 72, 74–75 (Sup.Ct.1913). Given the "sweeping generality of the statutory terms," it devolved on the courts to develop principles capable of distinguishing between "those accidental injuries which may fairly be said to have some work connection and those which may fairly be said to be unrelated to the employment." *Hornyak, supra*, 63 *N.J.* at 102. To that end, it was decided that an accident arises in the course of employment "if it occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." *Bryant, Adm'x v. Fissell, supra*, 84 *N.J.L.* at 77; *accord Wunschel v. City of Jersey City, supra*, 96 *N.J.* at 660. Further, the Court has ruled that an accident arises out of employment "when it results from risks reasonably incidental to employment," *Hammond, supra*, 56 *N.J.* at 11, meaning risks

that either "belong to" or are "connected with what a workman has to do in fulfilling his contract of service." *Bryant, Adm'x v. Fissell, supra,* 84 *N.J.L.* at 78.

To facilitate the task of distinguishing compensable from noncompensable incidents, the courts developed the going and coming rule, which ordinarily precluded an award of compensation benefits for "injuries sustained during routine travel to and from an employee's regular place of work." *Watson v. Nassau Inn,* 74 *N.J.* 155, 158 (1977); *accord Hammond, supra,* 56 *N.J.* at 11; *Ricciardi v. Damar Prods. Co., supra,* 45 *N.J.* at 61; *O'Brien v. First Camden Nat'l Bank & Trust Co., supra,* 37 *N.J.* at 162; *Gullow v. American Lead Pencil Co.,* 119 *N.J.L.* 484, 486 (E. & A. 1938). Sometimes referred to as the "premises rule," the doctrine "rests on the assumption that 'an employee's ordinary routine day to day journey' to and from work at the beginning and at the end of the day neither yields a special benefit to the employer * * * nor exposes the employee to risks which are peculiar to the industrial enterprise." *Watson v. Nassau Inn, supra,* 74 *N.J.* at 159 (citations omitted). "[I]t signifie[s] that until an employee [comes] on the employer's premises he [is] not in the course of employment; also, that at the end of the work period on leaving the premises he [steps] out of the course of employment." *O'Brien v. First Camden Nat'l Bank & Trust Co., supra,* 37 *N.J.* at 162.

The basic going and coming rule, however, became diluted by a series of exceptions. *E.g., Watson v. Nassau Inn, supra,* 74 *N.J.* at 159 (exceptions have "proliferated" and "overshadowed" basic rule); *White v. Atlantic City Press,* 64 *N.J.* 128, 134 (1973) (exceptions so numerous "that they have almost swallowed the rule"). Some members of the Court were willing to reject the rule entirely, and provide portal-to-portal compensation coverage, that is, from the time the employee left home in the morning until the time of his or her return. *See Watson v. Nassau Inn, supra,* 74 *N.J.* at 159–60; *Hornyak, supra,* 63 *N.J.* at 107; *Hammond, supra,* 56 *N.J.* at 12–13.

Viewed in light of the rule's singular function as an aid in the application of the basic statutory test for compensability, *see Briggs v. American Biltrite*, 74 *N.J.* 185, 189 (1977) (application of going and coming rule cannot "override basic question of whether employee is serving incidental interest of employer"), some of the exceptions were fully consistent with the "arising out of and in the course of" requirement, and thus clearly warranted. *Cf. Watson v. Nassau Inn, supra,* 74 *N.J.* at 160 (noting Court's awareness of danger that going and coming rule would "yield inequitable results" in derogation of Act's purposes); *O'Brien v. First Camden Nat'l Bank & Trust Co., supra,* 37 *N.J.* at 163 (mechanical reliance on going and coming rule could yield unjust results in particular cases). The "special errand" or "special mission" exception was one such exception: when an employee departed from his routine travel to and from work "in order to do something for and at the direction of the employer," he was in the course of his employment during the side trip. *Id.* at 163; *see* 1 A. Larson, *Law of Workmen's Compensation,* § 16.11 at 4–124 to 4–141 (1985 rev.) (*Larson* ). A second such exception dictated that when an employee was required to use his own automobile for work-related duties, compensability would attach at the moment he left his home. *E.g., White v. Atlantic City Press, supra,* 64 *N.J.* at 134. In both cases, coverage is deemed warranted by the "arising out of and in the course of" standard because the employee, though not on the employer's premises, is directly involved in completing employer-directed tasks. *Cf. Lehigh Navigation Coal Co. v. McGonnell,* 120 *N.J.L.* 428 (Sup.Ct.1938) (employee directed to take specific train to and from work).

However, other exceptions, and in some cases particular applications of the exceptions discussed above, led to results less clearly supported by the statutory standard. Several cases extended coverage to risks and injuries only indirectly related to employment, generously applying the concept of employer benefit in concluding that specific injuries were work-connected. For example, in *Wyatt v. Metropolitan Maintenance Co.,*

*supra,* 74 *N.J.* 167 and *Hornyak, supra,* 63 *N.J.* 99, compensation was awarded to employees injured during the course of voluntary trips off the employer's premises to procure food during lunch breaks. In *Hornyak,* where the injury resulted from a car accident, the Court reasoned that the employee's desire to obtain hot food, while strictly a matter of his choice, "was also geared towards increasing his efficiency which was clearly in his employer's interests," *id.* at 107, and that "[b]ut for his employment * * * he would not have been subjected to the particular highway risks" giving rise to the accident. *Id.* at 108. In *Wyatt,* where the off-premises injury occurred when the employee was robbed and shot, the Court found compensation appropriate simply because the mealtime departure was "permitted or countenanced by the employer" and because the employee was prepared to return to work at the end of his break. 74 *N.J.* at 171.

Another controversial holding was *Watson v. Nassau Inn, supra.* There, the Court held that compensation benefits were warranted where an off-duty waiter was struck by an uprooted tree while proceeding from his rented room, where he had retrieved his soiled work clothes, to an employer-provided parking lot where he was to meet a fellow employee who drove him home every Thursday. 74 *N.J.* at 157–58. The Court found that the waiter's injury satisfied the statutory requirements because retrieving the dirty uniforms to be washed was in the employer's interest, and because the trip between the restaurant, the rented room, and the parking lot was related to the employee's work. *Id.* at 161–63. *See also Pearce v. New Jersey Highway Auth.,* 122 *N.J.Super.* 342 (App.Div.1973) (compensation for employee injured while driving to work on Parkway not barred by going and coming rule because employer provided employee with coupons for the tolls; "intrusion" of employer into travel habits "necessarily implies some benefit to or for the employer * * * "). In sum, these and other cases led the Court in *Briggs v. American Biltrite, supra,* to conclude that while the going and coming rule had not been overruled, it

had been narrowed to have "a rather limited applicability, extending only to those routine daily trips to and from an employee's fixed place of business at specified hours at the beginning or end of the day." 74 *N.J.* at 190.

Some of these decisions met with harsh criticism, primarily from Dean Larson, *see* 1 *Larson, supra,* § 15.12 at 4–8 to 4–21, and were characterized as having disrupted the carefully crafted social and economic compromise contemplated by the workers' compensation legislation. *Cf. Wyatt v. Metropolitan Maintenance Co., supra,* 74 *N.J.* at 174–76 (Schreiber, Clifford, JJ., dissenting) (unwarranted extension of coverage impairs balance of economic tradeoffs established by Act). Indeed, several of the decisions rejecting application of the going and coming bar were issued over sometimes vigorous dissents. *E.g., Briggs v. American Biltrite, supra,* 74 *N.J.* at 193–95 (Schreiber, Clifford, JJ., dissenting) (arguing that majority's contention that employer was benefited by employee's voluntary off-premises lunch trip "is a thin thread indeed"); *Hornyak, supra,* 63 *N.J.* at 99 (Hall, J., dissenting); *Ricciardi v. Damar Prods. Co., supra,* 45 *N.J.* 54 (Proctor, Hall, Haneman, JJ., dissenting).

During this same period there were several decisions holding that parking lots owned, maintained, or provided by employers were to be considered part of the employer's premises, and that injuries occurring in such lots before or after the actual workday arose out of and in the course of employment. *See Konitch v. Hartung,* 81 *N.J.Super.* 376 (App.Div.1963) (plaintiff and defendant were in the course of employment when former was hit by latter's car before work in parking lot made available to employer; negligence suit barred by co-employee rule, *N.J.S.A.* 34:15–8), certif. denied, 41 *N.J.* 389 (1964); *Rice v. Pharmaceuticals, Inc.,* 65 *N.J.Super.* 579 (App.Div.1961) (reversing dismissal of compensation claim where employee was injured in lot, after work, while carrying discarded container for fellow employee); *Lewis v. Walter Scott & Co., Inc.,* 50 *N.J.Super.* 283 (App.Div.1958) (injury sustained on sidewalk connect-

ing employee's parking lot and entrance compensable since employee "must be regarded as having arrived at work once he entered the parking lot"); *Buerkle v. United Parcel Serv., supra,* 26 *N.J.Super.* 404 (compensation granted where employee slipped on ice in lot after work while trying to fix fellow employee's car); *McCrae v. Eastern Aircraft,* 137 *N.J.L.* 247 (Sup.Ct.1948) (compensation sustained where employee was injured in public crosswalk connecting plant and employee's parking lot; employer provided crossing guard in crosswalk and thereby "assumed control of the highway"). These decisions, representing the majority position on the issue, 1 *Larson, supra,* § 15.42 at 4–87 to 4–104, were expressly approved of and relied on by this Court in *Hammond, supra,* 56 *N.J.* at 14–15 (unanimous decision holding compensable injury sustained en route to corner near lot where employee was picked up after work).[3]

### III

In 1979 the Legislature enacted extensive amendments to the Workers' Compensation Act. *L.*1979, *c.* 283; *see Perez v. Pantasote, Inc.,* 95 *N.J.* 105, 111 (1984). A review of the legislative history indicates that the primary objectives "were to eliminate awards for minor partial disabilities, to increase awards for the more seriously disabled, and to contain the overall cost of workers' compensation." *Id.* at 114 (citing Senate Labor, Indus. and Professions Comm., Joint Statement to Substitute for S.802 & A.840 at 1 (Nov. 13, 1979) (*Joint Statement*)). One provision contained in this legislation was the more specific definition of employment. *L.*1979, *c.* 283, § 12 (codified at *N.J.S.A.* 34:15–36) (quoted *supra* at 93).

---

[3]The holding in *Hammond* appears to have been accepted in principle even by those members of the Court most critical of the exceptions to the going and coming rule. *Compare Wyatt v. Metropolitan Maintenance Co., supra,* 74 *N.J.* at 176 (Schreiber, Clifford, JJ., dissenting) (expressing disagreement with *Hornyak* ) *with Watson v. Nassau Inn, supra,* 74 *N.J.* at 166–67 (Schreiber, Clifford, JJ., dissenting) (discussing, but not criticizing, *Hammond* ).

Expressing its disagreement with the judiciary's broad reading of the statutory criteria for coverage, the Legislature drafted the statute to "establish[ ] relief from the far-reaching effect of the 'going and coming rule' decisions by defining and limiting the scope of employment." Joint Statement, *supra,* at 2. *Cf. State v. Mulcahy,* 107 *N.J.* 467, 486 (1987) (Clifford, J., dissenting) (noting that Legislature had granted the courts "deliverance" from the chaos created "in the bad old days of the workers' compensation 'going and coming' rule * * * "). Thus the Legislature provided that "[e]mployment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer * * *." *N.J.S.A.* 34:15–36.[4]

The legislative history does not expressly reveal whether the Legislature intended to overrule the parking lot decisions discussed above. *Supra* at 99–100. This question was ad-

---

[4]Significantly, the statute also enacted several exceptions to the general definition of employment barring compensation for off-premises injuries. *N.J.S.A.* 34:15–36 (quoted *supra* at 93). These exceptions were derived from, and in some cases may have narrowed, pre–1979 case law exceptions to the going and coming rule. *See Ehrgott v. Jones,* 208 *N.J.Super.* 393 (App.Div.1986) (applying "special mission" provision of *N.J.S.A.* 34:15–36); *Mangigian v. Franz Warner Assocs., Inc.,* 205 *N.J.Super.* 422 (App.Div.1985) (rejecting applicability of "special mission" exception); *Mahon v. Reilly's Radio Cabs, Inc.,* 212 *N.J.Super.* 28 (App.Div.1986) (rejecting applicability of "employee-paid travel time" exception), certif. denied, 107 *N.J.* 79 (1987); *Nebesne v. Crocetti,* 194 *N.J.Super.* 278 (App.Div.1984) (same); *Ohio Casualty Group v. Aetna Casualty & Sur. Co.,* 213 *N.J.Super.* 283 (App.Div.1986) (rejecting applicability of, *inter alia,* exception for employee injured in "employer authorized vehicle."). In 1981 the statute was amended to include a further exception, covering employees participating in ride-sharing arrangements where the vehicle used is either "owned, leased, or contracted for by the employer, or the employee is required by the employer to travel in a ride-sharing arrangement as a condition of employment." *L.*1981, *c.* 413, § 6 (codified at *N.J.S.A.* 34:15–36). This case, however, turns strictly on an application of the basic definition itself; hence these exceptions, providing coverage for certain classes of off-premises injuries, are not implicated.

dressed, however, by the Chief Judge of Compensation in an article written shortly after the new statute took effect. He stated that the new definition of employment "sharply curtailed" the compensability of off-premises accidents, but also emphasized that the "basic pattern and objectives of our Workers' Compensation Act remain unchanged." Napier, *Impact of the Reform Act of 1980*, 96 *N.J. Lawyer* 17, 17–18 (Summer 1981); *cf. Nemchick v. Thatcher Glass Mfg. Co.*, 203 *N.J.Super.* 137, 143–44 (App.Div.1985) (cost-saving objective of 1979 amendments does not compel rejection of result warranted by original "remedial purpose and spirit" of Workers' Compensation Act). In relevant part, he interpreted *N.J.S.A.* 34:15–36 "to remove from compensability certain cases heretofore held compensable where special hazards existed en route to the employer's premises, [and] off-premises injuries sustained during lunch hour * * *." *Id.* at 18. Similarly, in *Ward v. Davidowitz*, the Appellate Division ruled that the off-premises, lunch-break-type accident, held compensable in *Hornyak* and *Wyatt*, was "the specific type of claim which the Legislature intended to eliminate or curtail by enacting a specific definition of employment." 191 *N.J.Super.* 518, 523 (1983) (citing *Napier, supra*). Hence, the legislation apparently has not been viewed as overturning the noncontroversial, majority-rule parking-lot cases and holdings.

Indeed, we are persuaded that the Legislature impliedly approved of the principle established by those cases, namely, that lots owned, maintained, or used by employers for employee parking are part of the employer's premises, and had no intent to affect the validity of such decisions. Viewed in its entirety, the 1979 amendment to *N.J.S.A.* 34:15–36 reflects a significant familiarity with the pre–1979 "in the course of employment" cases turning on application of the going and coming rule. The statute, as noted, codified both a general definition of employment, and exceptions covering certain categories of off-premises accidents derived from earlier court decisions. *See supra* at 101 n. 4. The omission of any provision purporting to overrule

or limit the reach of the parking-lot cases, in light of the comprehensive nature of the amendment, indicates that the Legislature considered these cases to be consistent with the economic tradeoffs struck by the Act, and therefore in need of no correction. *Cf. Nemchick v. Thatcher Glass Mfg. Co.,* *supra,* 203 *N.J.Super.* at 143 (special-mission exception of 1979 amendment would be applied consistent with rationale underlying pre-amendment case law since court must presume Legislature was aware of such cases).

The narrow question before us, and that which divided the Appellate Division, is whether an award of compensation benefits is precluded by virtue of the statutory bar on coverage for injuries occurring in "areas not under the control of the employer." Put another way, in order to ascertain whether petitioner was injured *after* she had "arrive[d] at the employer's place of employment to report for work," and thus, "in the course of employment," we must decide whether the area of the mall lot where petitioner was directed to park can be considered as having been under the control of the appellant within the meaning of the statute.

In applying the term "control" to the facts of this case, the majority below correctly noted the importance of limiting judicially-created exceptions to the general noncompensability of off-premises accidents "in accordance with the clear legislative mandate of the 1979 amendments." 216 *N.J.Super.* at 690. Nonetheless, the court emphasized the need to engage in a flexible, case-by-case analysis. *Id.* Similarly, in *Cressey v. Campus Chefs, Div. of CVI Servs., Inc., supra,* 204 *N.J.Super.* at 343, the Appellate Division eschewed a narrow reading of control based on "concepts of exclusive control or duties of maintenance" in favor of the "common-sense" notion that the term implies simply "use by the employer in the conduct of his business." *Cf. Nemchick v. Thatcher Glass Mfg. Co.,* 203 *N.J.Super.* at 143 (application of 1979 special-mission exception must proceed on case-by-case basis); *Cudahy Packing Co. v. Parramore,* 263 *U.S.* 418, 44 *S.Ct.* 153, 68 *L.Ed.* 366 (1923)

(workers' compensation coverage depends on "particular cir-cumstances" of each case).

We are in general agreement with the need for a flexible approach in resolving such "in the course of employment" issues under the new legislation. The statutory definition of when employment begins and ends, *N.J.S.A.* 34:15–36, including the exclusion for accidents occurring in areas not under the employer's control, must still be construed and applied consist-ent with the general standard for coverage, *N.J.S.A.* 34:15–7, and its early explication in *Bryant, Adm'x v. Fissell, supra. See supra* at 95. And as noted, we believe the Legislature considered the pre-amendment parking-lot cases, awarding ben-efits for accidents in employer-owned and -provided lots, to be consistent with the "course of employment requirement."

■ Irrespective of whether appellant's parking directive was "enforced" by one of its security guards, we believe respon-dent's workday commenced when she arrived in her car at the section of the mall lot adjacent to appellant's premises, and therefore was in the course of employment when the accident occurred. *E.g., Konitch v. Hartung, supra,* 81 *N.J.Super.* at 378–83 (employee struck by fellow employee's car in lot made available to employer for certain employees held injured in course of employment). Further, we agree with the implicit judgment of the Appellate Division majority that the accident arose out of a risk incidental to respondent's employment. *See, e.g., Hammond, supra,* 56 *N.J.* at 14 (compensation appropriate for injuries suffered in parking lot provided by employer). The fact that Abraham & Straus neither owned, maintained, nor had the right exclusively to use this area of the lot, does not, in our view, render her injuries noncompensable.

The obvious fact in this record is that Abraham & Straus had the power to designate an otherwise under-used area of the shopping center parking lot for use by its employees. Under the circumstances of this case, the portion of the lot designated by Abraham & Straus for its employees' use was effectively

equivalent to an employer-owned lot. *Cf. Friskhorn v. Flowers*, 26 *Ohio App.*2d 165, 168–69, 270 *N.E.*2d 366, 369 (1971) (calling for sensible approach to concepts of control in modern day parking-lot cases). In this context, the "control" standard set forth in the statute is fully satisfied: not only did Abraham & Straus have the ability to direct its employees to park in the designated area; it also had the power to appropriate this far corner of the lot to its own use, and did so. Neither customers of the center nor other tenants of the center contested its use of the area. Even though Abraham & Straus lacked control in the formal property law sense, it possessed, factually, almost the identical attributes of control, which are sufficient to satisfy the principles underlying the statute. *See, e.g., May Dep't Stores Co. v. Harriman*, 307 *Md.* 692, 517 *A.*2d 71 (1986) (employee mugged in lot neither owned nor controlled by employer awarded benefits); *Merrill v. J.C. Penney*, 256 *N.W.*2d 518 (Minn.1977) (awarding benefits to employee injured after parking in distant overflow lot neither owned nor controlled by employer pursuant to employer directive); *Berry v. Gertz, Inc.*, 249 *N.Y.S.*2d 285 (App.Div.1964) (benefits awarded employee injured by slip and fall in lot of multi-store shopping center); *Friskhorn v. Flowers, supra*, 26 *Ohio App.*2d 165, 270 *N.E.*2d 366 (employee struck by car in lot of multi-store shopping center awarded benefits); 1 *Larson, supra*, § 15.42 at 4–100 to 4–101 ("if a shopping center parking lot is used by employees of businesses located in the center, the rule [that the lot is part of the premises] is applicable"); *cf. McCrae v. Eastern Aircraft, supra*, 137 *N.J.L.* at 247 (benefits awarded employee injured in crosswalk between parking lot and plant where employer assumed control of area by providing crossing guard). *But see Barham v. Food World, Inc.*, 300 *N.C.* 329, 266 *S.E.*2d 676 (N.C.Sup.Ct.1980) (accident in shopping center lot not covered).

Furthermore, by requiring its employees to park in a distant section of the lot, in order that customers could enjoy the convenience of parking adjacent to Abraham & Straus, appellant caused its employees to be exposed to an added

hazard, on a daily basis, in order to enhance its business interests. In our view, it is entirely consistent with the fundamental purposes of workers' compensation legislation that appellant assume responsibility for injuries thus sustained.[5]

The judgment of the Appellate Division is affirmed, and the matter is remanded to the Division of Workers' Compensation for further proceedings consistent with this opinion.

CLIFFORD, Justice, dissenting.

The Court's opinion proclaims good news along with a lot of bad news. And bad law. The good news is that the majority wisely rejects the Appellate Division's quaint "control over the employees" basis for imposition of employer liability. The bad news is that it excogitates its own quirky notion of employer control of the accident site, henceforth to be known, perhaps, as the "under-used area" theory (see *ante* at 104.) Alas, the starting signal has sounded: we are off and running on the first lap of our race to surpass, if possible, the utter confusion we created with our exceptions to the "going and coming" rule before the Legislature took pity and, through its extensive amendments to the Workers' Compensation Act, *L.*1979, *c.* 283

---

[5]Our dissenting colleagues, haunted by recollections of past applications and modifications of the "going and coming" rule, have misread, perhaps understandably, our holding as a reincarnation of "the utter confusion we created with our exceptions to the "going and coming" rule, *post* at 106, protesting that the majority is "toying around" with the 1979 amendments to the Workers' Compensation Act. *Post* at 108. As noted above, *supra* at 100–101, nothing in the amendments or the attendant legislative history supports the dissenters' view that the 1979 amendments were intended to change the common-sense rule that employers are liable for a worker's injury after the worker arrives at the employer's parking lot. Our decision today, consistent with both the 1979 amendments and pre-amendment case law, simply applies that principle to a shopping-center employer who, for its own convenience, dictates to its employees the area of the parking lot in which they must park, exposing them to added risks for the employer's sole convenience. It requires no novel or creative techniques of statutory construction to conclude, as we do, that under such circumstances the "control" requirement of the statute is obviously satisfied.

(the Act), spared us further uneasiness. *See State v. Mulcahy,* 107 *N.J.* 467, 486 (1987) (dissenting opinion). Or so it thought. And so one must wonder: are we just slow learners when it comes to the lesson of our own unhappy experience?

## I

The employee parked her car in the general parking area of the mall in which was located the store of her employer, Abraham & Straus (A & S), a tenant and one of four "anchor" stores of about 120 shops in the mall. She was walking across the parking lot toward the A & S employees' entrance, about 180 feet away, when struck by a car driven by a co-employee. In the employee's action for workers' compensation benefits the judge of compensation dismissed the petition. A divided Appellate Division panel reversed. *Livingstone v. Abraham & Straus,* 216 *N.J.Super.* 685 (1987). The issue posed by reason of the dissent below is whether the employee's injuries arose out of and in the course of her "employment" as that term is defined in *N.J.S.A.* 34:15-36. More specifically, the question is whether the mall parking lot is part of the employer's "place of employment" and "under the control" of A & S. In my view Judge Michels, dissenting below, has this one right: his answer, and mine, to all of the above is "no." 216 *N.J.Super.* at 692-97.

## II

One must start, as Judge Michels does, with a respectful observance of an appellate court's role in reviewing the compensation judge's findings that the employer was not in control of the parking area and was simply a tenant in the mall, 216 *N.J.Super.* at 693, wherefore the accident was non-compensable. *Ibid.* Those critical conclusions surely find adequate support in the record and should not be disturbed on review. *Ibid.*

The controlling portion of the statute, *N.J.S.A.* 34:15–36, part of the extensive amendments to the Act, reads:

Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment excluding areas not under the control of the employer; * * *.

As the Court notes, *ante* at 101 n. 4, this appeal "turns strictly on an application of [this] basic definition * * *." That definition must be read and applied, I submit, with one eye firmly fixed on the purposes of the amendments: to "put significantly more money into the hands of the more seriously injured workers while providing genuine reform and meaningful cost containment for New Jersey employers from unjustified workers' compensation costs that are presently among the highest in the nation." *Joint Statement of the Senate and Assembly Labor, Industry and Professions Committees to S 802 and A 840* (1979) (Joint Statement), 1. Significantly for today's purposes, the legislature focused directly on the problem posed by this case when it sought to achieve its cost-containment objective by "establishing relief from the far-reaching effect of the 'Going and Coming Rule' decisions by defining and limiting the scope of employment." *Id.* at 2. With that declared purpose in mind, and given the plain and unambiguous language employed by the legislature, I see no room for toying around—and no legitimate policy reason for making the effort—with the statute's straightforward meaning: the employee has the burden of establishing that the accident happened in an area that was under the control of the employer. Whatever the law used to be—those interested in the history of these things will be rewarded by the Court's perlustration of the late, unlamented "going and coming" rule, *ante* at 96–100—it is no longer enough, as Judge Michels points out, that the accident occurred in an area in reasonable proximity to the employer's place of business. 216 *N.J.Super.* at 695.

I refuse to complicate this simple problem. Nor, contrary to the majority's charge, *ante* at 106 n. 5, do I adopt the view that "the 1979 amendments were intended to change the

common-sense rule that employers are liable for a worker's injury after the worker arrives at the employer's parking lot." No such thing. But the problem here, lest it has not yet sunk in, is that the accident site was *not* under the employer's control as contemplated by the Act. In that regard I cannot improve on Judge Michel's reasoning, restated here:

> Neither the parking area nor the road where the accident occurred was under respondent's control in any sense. [A & S] did not own, maintain, or even have exclusive use of the area where [the employee] parked her automobile or the road where the accident occurred. Moreover, nothing in the record suggests that [A & S] had the power or authority to manage, direct, regulate, or supervise these areas. [The employer] simply had the right to use the area for customer and employee parking. The right to use is not equivalent to control.
>
> Moreover, the fact that respondent directed its employees to park in a specific area does not constitute control of the area within the scope and intendment of *N.J.S.A.* 34:15–36 or transform an occurrence of the kind here involved into a compensable accident. In my view, the majority has in effect read out of the statute the phrase "excluding areas not under the control of the employer," thereby undercutting the legislative purpose sought to be achieved by the 1979 revision of *N.J.S.A.* 34:15–36.
>
> [216 *N.J.Super.* at 696 (Michels, J.A.D., dissenting).]

Amen. I would reverse and reinstate the judgment of the Division of Workers' Compensation dismissing the claim petition.

POLLOCK and GARIBALDI, JJ., join in this opinion.

*For affirmance*—Chief Justice WILENTZ and Justices HANDLER, O'HERN and STEIN–4.

*For reversal*—Justices CLIFFORD, POLLOCK and GARIBALDI–3.