WILLIAM J. PLODZIEN, PETITIONER–APPELLANT, v.
TOWNSHIP OF EDISON POLICE DEPARTMENT,
RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted September 12, 1988—Decided October 7, 1988.

Before Judges J.H. COLEMAN and D'ANNUNZIO.

*Drazin and Warshaw*, attorneys for appellant (*Robert A. Olkowitz*, on the brief).

*Dolan and Dolan*, attorneys for respondent (*Kathleen J. O'Brien*, on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

The issue is whether injuries sustained by appellant, William J. Plodzien, in an automobile accident, while appellant was driving to work in his private automobile, are compensable under the Workers' Compensation Act (the Act). The Division of Workers' Compensation denied appellant's petition for benefits and we now affirm.

Appellant was a police officer when the accident occurred. He was in full uniform, including badge, handgun and ammunition and was driving to police headquarters where, upon arrival,

he would begin his tour of duty. Police department regulations permitted uniformed officers to wear their uniforms traveling to and from work, but they did not require that the uniforms be worn.

An employee is entitled to workers' compensation benefits for injuries "arising out of and in the course of employment." *N.J.S.A.* 34:15–7. Prior to the 1979 amendments to the Act, *L.*1979, c. 283, the Act did not contain a definition of employment, and it became the courts' responsibility to develop principles "distinguishing compensable from noncompensable incidents." *Livingstone v. Abraham & Straus, Inc.*, 111 *N.J.* 89, 96 (1988) (hereafter *Livingstone* ). One of these principles, the going and coming rule, "ordinarily precluded an award of compensation benefits for 'injuries sustained during routine travel to and from an employee's regular place of work.' " *Ibid.* (quoting *Watson v. Nassau Inn*, 74 *N.J.* 155, 158 (1977)). However, the going and coming rule became riddled with a series of exceptions. *See generally Livingstone, supra* 111 *N.J.* at 96–103, for a comprehensive discussion of the going and coming rule and its exceptions.

One of the exceptions, established in *Jasaitis v. Paterson*, 31 *N.J.* 81 (1959), is relied upon by appellant. In that case, the Court held that injuries sustained by a policeman when he slipped on a patch of ice after stepping from a bus were compensable. The policeman was in uniform and was traveling home after his tour of duty. The Court relied on the fact that police department rules permitted Jasaitis to wear his uniform for one hour before and after his fixed duty hours. The Court reasoned that wearing the uniform served the police department's interest in the rendition of police protection in that "[h]e deters crime by his uniformed presence, acts as a haven for those in need of protection and symbolizes a safe community." *Id.* 31 *N.J.* at 86.

*Jasaitis* would control the present case but for the 1979 amendments which included a definition of employment:

Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer; provided, however, when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer; but the employment of employee paid travel time by an employer for time spent traveling to and from a job site or of any employee who utilizes an employer authorized vehicle shall commence and terminate with the time spent traveling to and from a job site or the authorized operation of a vehicle on business authorized by the employer. Travel by a policeman, fireman, or a member of a first aid or rescue squad, in responding to and returning from an emergency, shall be deemed to be in the course of employment. [*L.*1979, c. 283, Section 12; *N.J.S.A.* 34:15–36]

The issue is whether the Legislature, by adopting this definition of employment, superseded *Jasaitis*, thereby precluding compensation in the circumstances of this case.

The Joint Statement of the Senate Labor, Industry and Professions Committee indicated that the 1979 amendments would benefit employers by, *inter alia*, "establishing relief from the far-reaching effect of the 'Going and Coming Rule' decisions by defining *and limiting* the scope of employment." (Emphasis added). We recognized in *Ward v. Davidowitz*, 191 *N.J.Super.* 518 (App.Div.1983), that the benefit conferred on employers by the definition of employment was not relief from the going and coming rule but rather relief from the numerous exceptions to that rule. *Id.* 191 *N.J.Super.* at 522. *Ward* noted that the compensability of lunch break accidents recognized in *Hornyak v. Great Atlantic & Pacific Tea Co.*, 63 *N.J.* 99 (1973) and *Wyatt v. Metropolitan Maintenance Co.*, 74 *N.J.* 167 (1977) was one of the exceptions. *Id.* 191 *N.J.Super.* at 523. Consequently, *Ward* held that injuries sustained in an automobile accident which occurred while employees were returning to their place of employment, after their lunch, were not compensable under the Act, absent "special circumstances or arrangements, between employer and employee, which would bring an accident occurring during a trip for lunch away from the

employer's premises within the definition of employment contained in *N.J.S.A.* 34:15–36." *Id.* at 524.

In *Livingstone,* our Supreme Court considered the Legislature's intent in defining employment and suggested that the Legislature did not necessarily intend to overrule certain noncontroversial judicial exceptions to the going and coming rule. Specifically, the Court was "persuaded that the Legislature impliedly approved of the principle ... that [parking] lots owned, maintained, or used by employers for employee parking are part of the employer's premises, and had no intent to affect the validity of such decisions." *Livingstone* 111 *N.J.* at 102.

Thus, in ruling that an employee parking lot was part of the employer's premises, the Court in *Livingstone* implied that the Legislature did not intend to eliminate all judicially created exceptions to the going and coming rule, although the Court noted "the importance of limiting judicially created exceptions to the general noncompensability of off-premises accidents...." *Id.* 111 *N.J.* at 103.

*Livingstone* involved an injury to an Abraham & Straus employee who was struck by a car as she walked from her parked car to the Abraham & Straus employees' entrance to report to work. The store was one of four anchor tenants in the Monmouth Mall. Livingstone had parked in a "far corner of the mall parking lot, where all Abraham & Straus employees had been directed to park." *Id.* 111 *N.J.* at 91. In holding that the injury was compensable, the Court ruled that a parking lot used by employers for employee parking is part of the employer's premises and that Abraham & Straus had sufficient control of the lot to satisfy the statutory definition of employment.[1] *Id.* 111 *N.J.* at 105.

---

[1]*Livingstone* was a 4–3 decision. Justice Clifford filed a dissenting opinion, in which Justice Pollock and Garibaldi joined, in which he emphasized Abraham & Straus' lack of control of the parking lot.

*Livingstone* does not control our decision in the present case because it is factually distinguishable. In the present case, appellant was on a public highway when he was injured. He had not reached police headquarters or any parking lots or facilities accessory to police headquarters. Moreover, in *Livingstone* the Court clearly labeled the lunch break exception recognized in *Hornyak* and *Wyatt* as an exception "less clearly supported by the statutory standard" that an injury arise out of and in the course of employment, *Livingstone* 111 *N.J.* at 97, thereby supplying tacit approval to the holding in *Ward v. Davidowitz, supra.* The present case, involving the initial daily journey to the workplace from the employee's home is even less clearly supported by the statutory standard of "arising out of and in the course of employment." The present case clearly falls outside the bright line definition of employment because appellant had not arrived "at the employer's place of employment to report for work...." *See Livingstone* 111 *N.J.* at 104 ("respondent's workday commenced when she arrived in her car at the section of the mall lot adjacent to appellant's premises...."). *See also Nebesne v. Crocetti,* 194 *N.J.Super.* 278 (App.Div.1984) (accident during travel not compensable unless employee paid for travel time, though employer paid travel expenses). *But cf. Nemchick v. Thatcher Glass Mfg. Co.,* 203 *N.J.Super.* 137 (App.Div.1985) (employee injured while driving home after completion of an assigned off-premises task entitled to compensation benefits).

In defining employment, the Legislature enacted exceptions to the general definition, including an exception crafted specifically for policemen and other public safety personnel. This exception provides that "[t]ravel by a policeman ... in responding to and returning from an emergency, shall be deemed to be in the course of employment." Although this exception demonstrates that the Legislature considered and addressed the problem of police travel to duty assignments, no exception was created for policemen driving to work in uniform in a non-emergency situation. These exceptions, and in particular the excep-

tion relating to police personnel, invite application of the principle that an express exception "comprises the only limitation on the operation of the statute and no other exceptions will be implied." 2A Sutherland, *Statutory Construction,* § 47.11 at 145 (Sands, 4th ed). *See State v. Reed,* 34 *N.J.* 554 (1961). Application of this principle is also indicated by the assumption that the Legislature was aware of the exception created in *Jasaitis v. Paterson, supra. Quaremba v. Allan,* 67 *N.J.* 1, 14 (1975) (it is assumed that the Legislature is conversant with the judicial construction of its own legislation).[2] Nevertheless, the Legislature chose not to include the *Jasaitis* exception in the definition of employment. Failure to do so was consistent with the legislative intent to grant relief from the exceptions to the going and coming rule decisions by "limiting the scope of employment." *Joint Statement, supra.*

AFFIRMED.

---

[2]The assumption is particularly apt in this case because the legislative history, referred to *supra,* specifically refers to going and coming rule decisions.