KATE M. DEMEREST, FLORENCE MOORE, HELEN MOORE AND CATHERINE P. MOORE, PLAINTIFFS-APPELLANTS, v. EDITH GUILD AND METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION, DEFENDANTS-RESPONDENTS.

Submitted October 26, 1934—Decided January 24, 1935.

For the appellant, *Ira C. Moore, Jr.*

For the respondent Metropolitan Life Insurance Company, *Frederick A. Pope.*

The opinion of the court was delivered by

KAYS, J.   This is an appeal from a judgment entered in the Supreme Court.  The case was tried at the Somerset Circuit.  At the close of the plaintiffs' case the judge directed a verdict of nonsuit in favor of the defendant, the Metropolitan Life Insurance Company, on the ground that no agency had been shown between the defendant, Edith Guild, the driver and owner of the car, and the defendant, the Metropolitan Life Insurance Company.

The action was for compensation for injuries sustained by the plaintiffs as a result of a collision between an auto-

mobile in which the plaintiffs were riding and an automobile owned and driven by the defendant, Edith Guild. It appears that Mrs. Guild was on her way home from her work when the accident occurred. She was employed by the defendant, the Metropolitan Life Insurance Company, as a visiting nurse in and about Union City. Her residence was Dunellen, New Jersey. She was paid a monthly salary for her services. The nursing supplies which she used for the treatment of policy holders of the defendant company were furnished by the company. According to her own testimony it was necessary that Mrs. Guild use an automobile to perform her duties. She also testified that the district in which she worked was known as an "automobile district" which indicated that such district could not be reached by trolley car or bus and the distances between the cases which she was called upon to treat were such that one would lose too much time in travel unless such person used an automobile. She further said: "I couldn't go around the district without using a car." Mrs. Guild used her own car for her visits and the company paid her $20 per month for the expense of operating it. The $20 was in addition to her regular salary. She kept the car at her home in Dunellen. It was her duty to report to the offices of the company in Union City each day and to receive instructions where to go in the performance of her duties. The accident occurred on a Saturday afternoon. Mrs. Guild started for her home in Dunellen immediately after visiting her last patient.

The sole question involved in the case is whether Mrs. Guild was in the course of her employment at the time the accident occurred. The accident occurred in North Plainfield while Mrs. Guild was proceeding toward her home. Appellant urges that she was still in the course of her employment for the reason that she was paid for the use of her car: that no place was furnished her by the defendant company in which to keep the car and that her duties were such that she was compelled to use a car from her residence to the district and throughout the district in the performance of her duties and that, therefore, she was acting for her em-

ployer until she returned to her home. There is no evidence in the case that the company compelled her to keep the car in any particular town or garage. It may be that she was justified in leaving her car anywhere she chose and it seems to appear that the company allowed her to do just that thing. Such appears to be the evidence in this case and we think that the facts are controlled by the case of *Auer* v. *Sinclair Refining Co.,* 103 *N. J. L.* 372. In the above case it appeared that the defendant, MacLachlan, was employed by the Sinclair Refining Company to devote his whole time and best endeavors to the sale of the company's products to factories in a specified territory in New Jersey; that he was authorized to use in that work his own automobile; that the company paid him for the upkeep and running expenses of his car weekly, in addition to his salary which was paid every two weeks, and that the company retained control and directed the work by daily telephonic or written communications with him from its New York office. Under these facts this court held that he was a servant of the company and that he was acting within the scope of his employment in performing an act for the master's benefit. The accident occurred while MacLachlan was driving from the point of his last call to the garage at his home where he kept his car. The only difference between the case now before us and the Auer case above mentioned, is that the accident occurred in the territory where the employe actually sold the company's products. In order to relieve a master from the liability of the act of his servant such act done by the servant must be entirely disconnected from the service or employment. In the case of *Sanford* v. *Charles H. Totty Co.,* 110 *Id.* 262, the facts were that one, Yoder, made sales trips in one of the company's automobiles which often lasted the entire week. On this occasion the salesman, Yoder, had been making sales through some part of the State of Connecticut; that after he had finished his work he started for his home in Madison, New Jersey, and obtained permission from the company's manager to use the automobile to make a personal call on a friend in Rutherford, New Jersey. After he finished this

personal business which was shopping in New York and had gone to Rutherford, he then started back to Madison, his purpose being to put the car in his own garage where it was his custom to keep the same. The accident happened while driving from Rutherford to his home in Madison. Chief Justice Gummere, in writing the opinion of this court, said:

"On the proofs referred to, it became, in our opinion, a question to be decided by the jury as to whether or not he was using the automobile for his own purposes at the time of the happening of the accident, for if at the time it happened Yoder had ceased the use of the car for his own purposes and was driving it to its destination—that is, to the garage where it was kept while not being used—he was then engaged in the business of his employer, under our cases."

In the Sanford case the car used was a car of the company but the accident occurred not in the territory where the salesman had been on the business of his master. In the Auer case the accident occurred in the territory where the salesman had been on the business of his master but in a car owned by the servant for which he was allowed a stipulated sum for upkeep and running expenses. In the case now before us the car was not in the territory where Mrs. Guild had been performing her duties as an employe of the company and the car belonged to Mrs. Guild, the employe. It appears, however, that the company had constructive notice that Mrs. Guild was keeping her car at her home in North Plainfield. The company also had knowledge from the fact that it allowed her an amount for the expenses of the operation of the car that her district was an "automobile district" in which it was necessary to use a car in the performance of her duties. She testified to this fact. The company did not instruct Mrs. Guild to leave the car at Union City or to leave it in the district where she was accustomed to perform her duties. Naturally Mrs. Guild would keep the car in the least expensive place and this was not objected to by the company and should have been contemplated by the company. In order to get the car to the district in which she worked it was necessary for her to drive it from her home

to the Union City district where she was employed. It seems to us that this use of the car in driving from her home to the district where she was employed and after her duties in the district had been performed in driving the car back to her home was for the benefit not only of Mrs. Guild but also of the company which employed her. *Depue* v. *Salmon Co.*, 92 *N. J. L.* 550; *Dunbaden* v. *Castles Ice Cream Co.*, 103 *Id.* 427. It was beneficial to the defendant company to have Mrs. Guild report to the office of the company promptly mornings for the purpose of receiving instructions and for the purpose of obtaining orders as to which persons were in need of medical treatment and nursing. The company was directly interested in the health of those whose lives or health it was insuring. *Central Railroad Co.* v. *Morgan*, 89 *Id.* 165. *Foley* v. *Home Rubber Co.*, 91 *Id.* 323.

We are, therefore, of the opinion that there was sufficient evidence in the case to submit to the jury the question whether or not the employe, Mrs. Guild, was in the course of her emploment at the time the accident occurred. For the reasons above given the judgment under review is reversed to the end that a *venire de novo* may issue.

*For affirmance*—LLOYD, J. 1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, KAYS, HETFIELD, DEAR, WELLS, JJ. 12.