231 N.J. Super. 383 (1989)
555 A.2d 731
LANE WALSH, WIDOW OF KEVIN WALSH, PETITIONER-RESPONDENT,
v.
ULTIMATE CORPORATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1989.
Decided March 17, 1989.
*385 Before Judges SHEBELL and LANDAU.
Joseph V. Wallace argued the cause for respondent-appellant (Haskins, Hack, Piro, O'Day, Merklinger & Wallace, attorneys; Joseph V. Wallace, of counsel and on the brief).
Alan Roth argued the cause for petitioner-respondent (Bendit, Weinstock & Sharbaugh, attorneys; Alan Roth, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
This is an appeal by the employer Ultimate Corporation, from a final decision of the Division of Workers' Compensation finding that Kevin Walsh, a deceased employee, died as a result of an accident which occurred during and in the course of his *386 employment. The compensation judge found that at the time of decedent's automobile accident the decedent was carrying out one of the assigned duties by his employer, namely, "to get acquainted with the country, the customs and people of Australia." The judge further found that inasmuch as the petitioner had additional work with him in his vehicle, and the accident occurred "before petitioner had an opportunity to reach a place where he could complete that work ... his work day was still in progress at the time of the automobile accident." We hold that decedent was not engaged in the direct performance of his duties at the time of his accident and that the so-called "special mission" or "special errand" rule is not applicable under the facts proven.
Appellant presented no witnesses before the Workers' Compensation Court to refute the testimony offered on behalf of the petitioner-widow. The petitioner presented the testimony of two former employees of the appellant to establish that her deceased husband, who had begun employment with appellant in August of 1984 doing financial accounting, left on December 7, 1984 for Perth, Australia on an assignment which was to last until Christmas. Decedent's employer had asked him to move to Australia with his family for a period of approximately one year commencing in January of 1985. Decedent's primary task was to straighten out the "mess" in the Perth office. However, it was also felt by his supervisor that part of the benefit of this initial trip to Australia would be for decedent to travel about and enjoy the country to the end that he would be "enthusiastic upon his return from Australia [at Christmas] when discussing the move with his family." Thus, according to decedent's supervisor, they would all be encouraged to make the move, as decedent's wife was not excited about the idea because of its impact on the couple's two young children.
Decedent's supervisor was the Vice-President of Finance, the company's chief financial officer. He verified that the company would pay any and all expenses involved in the trip that were not exorbitant, including food, travel on location, hotel expenses *387 and the like. He also indicated that the employee knew that accepting the year in Australia would aid his career and that, although decedent would not be fired if he did not go, as the decedent's supervisor he would not feel the same about the employee if he did not respond when asked to make such a commitment on behalf of the company.
During telephone conversations from Australia to the United States, decedent's supervisor suggested that he go to particular restaurants and visit certain beaches and not stay in the office or hotel on weekends. On the day of his accident, decedent worked at the Perth office from 8 a.m. until noon or 1 p.m. and then went to lunch with other employees, following which he rented a car to travel to Wave Rock. Although it is not clear from the record, this appeared to be a rather substantial motor trip involving over two hours of driving. The decedent brought work with him from the office as he planned to work when he got to the hotel, go to sleep for the night and then go sight-seeing the next day before returning to Perth. As best as can be gleaned from the record, the employee did not make it to Wave Rock because of the automobile accident. The employee remained in a coma for many months and died on May 22, 1985.
N.J.S.A. 34:15-36 states in pertinent part:
Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer; provided, however, when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer; but the employment of employee paid travel time by an employer for time spent traveling to and from a job site or of any employee who utilizes an employer authorized vehicle shall commence and terminate with the time spent traveling to and from a job site or the authorized operation of a vehicle on business authorized by the employer.
In Mangigian v. Franz Warner Assoc., Inc., 205 N.J. Super. 422, 425-26 (App.Div. 1985), we traced the judicial expansion of the "going and coming" rule which had precipitated the Legislature to enact N.J.S.A. 34:15-36 as part of a reform of the *388 workers' compensation laws. One aim of its adoption was to provide "a convenient formula for separating work-connected risks from those which are unrelated to employment." Watson v. Nassau Inn, 74 N.J. 155, 158-59 (1977). Thus, the statute restricts the liability of an employer for accidents occurring in areas not under its control unless the employee is required to be away from the place of employment, in which event, "the determining element of compensability rests upon the direct performance of duties assigned or directed by the employer rather than on the place of employment." Ward v. Davidowitz, 191 N.J. Super. 518, 523-24 (App.Div. 1983).
In Nemchick v. Thatcher Glass Mfg. Co., 203 N.J. Super. 137, 141-42 (App.Div. 1985), we recognized the continued viability of the special mission rule. We do not dispute that it was the intent of the Legislature to preserve the special mission exception to the "going and coming" rule in circumstances where an employee is away from the work place at his employer's direction as long as the employee is engaged in the direct performance of duties assigned by his employer. Id. at 142. We further stated in Nemchick that we would not define the outer limits of the phrase "direct performance of duties assigned or directed by the employer," but rather considered that the concept was to be further refined on a case-by-case basis. Id. at 143.
There are two perspectives from which to view the status of the petitioner's decedent in this case. The first would be to take an all encompassing view of decedent's temporary Australian assignment and examine whether that entire trip constitutes a special mission from his normal place of business in New Jersey. From that vantage point one would not look further than the fact that decedent was in Australia and thus away from the "employer's place of employment" for the purpose of carrying out his employer's directive to straighten out the Australian operation and see the country. The petitioner urges that since all expenses including travel, meals, hotels, entertainment and the like were to be paid by the employer that *389 this is the correct approach. Petitioner emphasizes that as decedent's wife was not excited about going to Australia on the one-year assignment that there was clear benefit to the employer in directing that the employee get out and visit the country so that he could come back and tell his family it was the "greatest."
The second perspective would focus on the employee's accident and its relationship to the Perth office as decedent's place of employment as he was running the office during the time that he was in Australia. The court would then determine whether the trip to Wave Rock was on a special mission in relation to the Perth office as the "employer's place of employment" under N.J.S.A. 34:15-36. In this regard the judge of compensation and the petitioner would nonetheless answer the question affirmatively by asserting that decedent normally worked a 12- to 16-hour day and that he had work with him which he would perform when he arrived at his destination.
We have considered petitioner's claim from both perspectives, but we are unable to conclude that either of these approaches effectively brings the employee's trip from the Perth office to Wave Rock within the course of his employment. While the provisions of N.J.S.A. 34:15-7 pertaining to an employee engaging in recreational or social activities may not be directly applicable, nonetheless the statutory requirement that the activity be a regular incident of employment and produce a benefit to the employer beyond improvement in employee health and morale is indicative of the spirit of the Legislature when it contemporaneously enacted the 1979 amendments under N.J.S.A. 34:15-36.
The judge of compensation observed in his decision that petitioner was against her husband going to Australia and that "[s]he knew that the decision to go or not to go to Australia for six months to a year would ultimately be up to her." This determination of the compensation judge is not supported by the record. Indeed, although appellant's objection to the testimony *390 was sustained, the petitioner's testimony was that "I think Kevin had decided that he had to do it." She fully acknowledged "I knew that I didn't particularly want to go. But the decision wasn't up to me." We point out this discrepancy as it bears on the assertion of the petitioner that the supervisor's urging of decedent to get out and see the country was one of the duties assigned by his employer as opposed to being a suggestion to improve the employee's morale.
We are convinced that even though the initial assignment may be viewed as temporary, the decedent had established a new "place of employment," within the contemplation of N.J.S.A. 34:15-36, when he arrived in Perth and assumed control of the office. In determining the status of the trip to Wave Rock, the compensation judge based his decision on the finding that the ordinary work day testified to by the petitioner's co-employee was 12 to 16 hours and that the decedent had work with him which he was going to complete when he arrived at his hotel before sight-seeing the next day. While it is true that the testimony of decedent's co-employee indicates that the work day after they arrived in Australia was 12 to 16 hours a day, it is clear that such hours pertained to weekdays and not to Saturdays when the work day apparently was from 8 a.m. to 12 or 1 p.m.
We are satisfied that the facts will support no other conclusion than that the decedent was not on duty at the time of his accident either by reason of his being encouraged to sight-see or by reason of the fact that he had work with him which he expected to work on when he arrived at his destination. Any work that he might do when he arrived at his destination was up to him both with respect to when and where he might do it. It was not directed by his employer that he go to the particular location where he was headed so that he might accomplish his work there. See Ohio Cas. Group. v. Aetna Cas. & Sur. Co., 213 N.J. Super. 283, 290 (App.Div. 1986).
*391 Decedent was not in the course of his employment at the time of his accident as he was not undertaking any obligatory task for his employer at the time. We reject as without merit petitioner's assertion that the "mutual benefit" doctrine requires that decedent's accident be found compensable. It is without factual or legal bases. The benefit to the employer was no greater than that which might be incidental to improving the employee's morale.
The judgment sustaining the dependency claim petition is reversed.