608 A.2d 231

GEORGE ZELASKO, PETITIONER–RESPONDENT,
v. REFRIGERATED FOOD EXPRESS,
RESPONDENT–APPELLANT.

Argued March 2, 1992—Decided June 24, 1992.

330

*Robert G. Bressler* argued the cause for appellant.

■■■■■■■■■

*Leonard D. Weiss* argued the cause for respondent (*Baer, Arbeiter, Ploshnick & Pessin,* attorneys; *David L. Ploshnick,* of counsel).

The opinion of the Court was delivered by

O'HERN, J.

This is a workers' compensation appeal. The issue is whether an accident that occurs after working hours, while an employee is en route to park his trailer at an off-site parking area not furnished by the employer, is compensable. The vehicle owned by the employee had been used by the employee on business authorized by the employer during the work day. We hold that the accident does not fall within any of the statutory exceptions that allow an award of workers' compensation benefits while "going and coming" to and from a place of employment. Thus, we reverse the judgment below.

I

Although petitioner is bound by the factual findings of the workers' compensation judge, we accept the version of facts set forth in his Appellate Division brief. Because the employee is referred to as the petitioner and the employer as the respondent in workers' compensation proceedings, we continue those references here.

Petitioner, George Zelasko (Zelasko or petitioner), drove a tractor-trailer for respondent, Refrigerated Food Express (Refrigerated or respondent). He was contractually required to own both the tractor and refrigerated trailer. During his off-duty hours, petitioner parked his tractor at his home in Jamesburg and his trailer in nearby Cranbury, on the property of an acquaintance. Jamesburg has an ordinance that bans overnight parking of a trailer. At the time of petitioner's injury, he had been employed by Refrigerated for thirteen years. Throughout that thirteen-year period, petitioner was required to submit a daily time log to Refrigerated. Petitioner's usual

routine was to log in when he entered his tractor in the morning and then to drive to Cranbury to pick up the trailer. In the evening, after leaving the trailer in Cranbury, petitioner would log out after returning to Jamesburg in the tractor.

On Thursday, April 12, 1990, Zelasko made a delivery to Supermarkets General in Woodbridge in the tractor-trailer. After unloading the trailer, he drove to Refrigerated's terminal in Old Bridge. There he dropped off several pallets. Because his next scheduled delivery date was not until Monday, April 16, petitioner did not reload. Zelasko then left the terminal with approximately thirty pallets belonging to him and headed toward Cranbury.

While en route to Cranbury, petitioner heard the pallets "kicking around" in the trailer. Realizing that the pallets might cause damage to the refrigeration unit, Zelasko decided to pull over. However, he was unable to do so immediately because the highway he was traveling on was very narrow and there was heavy traffic in the area. According to petitioner, because he was near his home, he knew of an area where he could safely pull over. Zelasko left the highway and stopped his truck approximately 300–400 feet from his home. He then left the tractor and climbed into the trailer to secure the pallets. While standing at the edge of the trailer, Zelasko began to lose his balance and decided to jump to the ground. Unfortunately, he landed improperly and injured his left foot.

On June 14, 1990, Zelasko filed a claim petition with the Division of Workers' Compensation. Refrigerated denied that the injury was compensable. The compensation judge dismissed petitioner's claim, finding that Zelasko had not been under Refrigerated's control at the time of the accident. The judge reasoned that Zelasko "left his employer's control * * * when he drove out of the employer's parking lot on Thursday afternoon."

The Appellate Division, in an unreported opinion, reversed. Relying on the authorized-vehicle exception to *N.J.S.A.* 34:15–

36, the panel held that at the time of the accident Zelasko had been driving an employer-authorized vehicle and that driving the vehicle to the overnight parking area was business authorized by the employer. We granted certification, 127 *N.J.* 555, 606 *A.*2d 367 (1991).

## II

Recently, in *Livingstone v. Abraham & Straus, Inc.*, 111 *N.J.* 89, 543 *A.*2d 45 (1988), we reviewed the "going and coming" rule of workers' compensation liability. We summarize the principles set forth therein.

Our original employees' compensation act did not contain a definition of employment. The Act simply allowed compensation when an employee was injured or killed in an accident "arising out of and in the course of employment." *L.*1911, *c.* 95, § 7. Because of the "sweeping generality of the statutory terms," it became necessary for the courts to develop principles to distinguish between "those accidental injuries which may fairly be said to have some work connection and those which may fairly be said to be unrelated to the employment." *Hornyak v. Great Atl. & Pac. Tea Co.*, 63 *N.J.* 99, 102, 305 *A.*2d 65 (1973). Thus, the courts developed the "going and coming" rule to differentiate between compensable and non-compensable claims. That rule ordinarily precluded an award of compensation benefits for "injuries sustained during routine travel to and from an employee's regular place of work." *Watson v. Nassau Inn*, 74 *N.J.* 155, 158, 376 *A.*2d 1215 (1977). However, many exceptions to the basic "going and coming" rule had arisen. *Id.* at 159, 376 *A.*2d 1215. In fact, those exceptions were so numerous that they "overshadowed" the basic rule. *Ibid.*

In 1979 the Legislature amended the Workers' Compensation Act in significant respects. *L.*1979, *c.* 283. The legislative history of the Act suggests that the primary goals of that legislation "were to eliminate awards for minor partial disabilities, to increase awards for the more seriously disabled, and to

contain the overall cost of workers' compensation." *Perez v. Pantasote, Inc.*, 95 *N.J.* 105, 114, 469 *A.*2d 22 (1984) (citing Senate Labor, Indus. and Professions Comm., Joint Statement to Substitute for S.802 & A.840 at 1 (Nov. 13, 1979) (*Joint Statement*)). That new legislation contained a specific definition of employment, *L.*1979, *c.* 283, § 12, which is now codified at *N.J.S.A.* 34:15–36. That definition is as follows: "Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer * * *." *Ibid.* The Legislature continued:

> provided, however, when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer; but the employment of employee paid travel time by an employer for time spent traveling to and from a job site or of an employee who utilizes an employer authorized vehicle shall commence and terminate with the time spent traveling to and from a job site or the authorized operation of a vehicle on business authorized by the employer. [*Ibid.*]

Thus, the Legislature stated its intent to "establish[ ] relief from the far-reaching effect of the 'going and coming rule' decisions by defining and limiting the scope of employment." *Joint Statement, supra,* at 2.

Although the question of off-premises accidents was not immediately addressed in the legislative history, the Chief Judge of Compensation stated in an article written shortly after enactment of the legislation that compensation for off-premises accidents was "sharply curtailed" by the new definition of employment. Alfred J. Napier, *Impact of the Reform Act of 1980*, 96 *N.J.Lawyer* 17, 18 (Summer 1981). He specifically construed *N.J.S.A.* 34:15–36 "to remove from compensability certain cases heretofore held compensable where special hazards existed en route to the employer's premises, [and] off-premises injuries sustained during lunch hour." *Id.* at 18. However, he warned that the "basic pattern and objectives of our Workers' Compensation Act remain unchanged." *Id.* at 17.

◼ In a series of opinions, our Appellate Division has filled in the contours of those statutory provisions. Although we must take some liberties with the syntax of the statute, as a general rule we interpret the statute as not allowing compensation for accidents occurring in areas outside of the employer's control, as when the employee is going to and coming from work. However, there are exceptions to that general rule.[1]

◼ A "special-mission" exception allows compensation at any time for employees
1. required to be away from the conventional place of employment;
2. if actually engaged in the direct performance of employment duties.

◼ A "travel-time" exception allows portal-to-portal coverage for employees
1. paid for travel time to and from a distant job site, or
2. using an employer-authorized vehicle for travel time to and from a distant job site.

We derive that understanding of the statute from the Appellate Division opinions interpreting the provisions of *N.J.S.A.* 34:15–36.

The first category, the "special-mission" exception, is exemplified by the cases of *Ehrgott v. Jones,* 208 *N.J.Super.* 393, 506 *A.*2d 40 (App.Div.1986), and *Nemchick v. Thatcher Glass Manufacturing Co.,* 203 *N.J.Super.* 137, 495 *A.*2d 1372 (App. Div.1985). In the first case, the employee-chemist was en route to Newark Airport to depart by plane to a convention in Las Vegas. He planned to arrive a day early for sightseeing. 208 *N.J.Super.* at 395–96, 506 *A.*2d 40. In *Nemchick,* the employee was returning home from an all-night assignment to investigate a problem with glass products at a client's plant at the behest of his employer. 203 *N.J.Super.* at 140, 495 *A.*2d 1372. In each instance, employment required the employee to be away from the conventional place of business, and because the travel

---

[1]We do not discuss travel by police, fire fighters, or rescue squad employees. Nor do we discuss ridesharing arrangements. *See N.J.S.A.* 34:15–36.

was an indispensable part of the performance of the job duty, it was required as part of that mission.

In contrast, in *Mangigian v. Franz Warner Assoc., Inc.*, 205 *N.J.Super.* 422, 501 *A.*2d 179 (App.Div.1985), a young woman required to be in New Jersey to conduct a field survey for her employer was not engaged in the direct performance of her duties when she went out for a late-night snack. *Id.* at 424, 501 *A.*2d 179. Nor was an employee required by his employer to be in Australia engaged in the direct performance of his duties when he took a day trip for sightseeing. *Walsh v. Ultimate Corp.*, 231 *N.J.Super.* 383, 390, 555 *A.*2d 731 (App.Div.), *certif. denied*, 117 *N.J.* 92, 563 *A.*2d 849 (1989).

The paid-travel or authorized-vehicle exception is best understood in the context of *Mahon v. Reilly's Radio Cabs, Inc.*, 212 *N.J.Super.* 28, 513 *A.*2d 367 (App.Div.1986), *certif. denied sub nom*, 107 *N.J.* 79, 526 *A.*2d 159 (1987); *Ohio Casualty Group v. Aetna Casualty & Surety Co.*, 213 *N.J.Super.* 283, 517 *A.*2d 166 (App.Div.1986); and *Chisholm–Cohen v. County of Ocean*, 231 *N.J.Super.* 348, 555 *A.*2d 713 (App.Div.1989). In *Mahon*, an employee of New Jersey Transit was provided free transportation, on the company's facilities, to and from work. 212 *N.J.Super.* at 32, 513 *A.*2d 367. The court reasoned, however, that compensated travel to and from the customary place of business was not intended to be covered by the exception and it introduced the concept that the job-site reference in section 36 is to a distant job site. *Id.* at 34, 513 *A.*2d 367. In *Ohio Casualty*, a New Jersey engineering company sent a supervisor to work on a nuclear plant in Vermont. 213 *N.J.Super.* at 285, 517 *A.*2d 166. While there, at a late-night gathering of employees, he was authorized to use a company vehicle to take a companion home from the gathering. *Id.* at 286, 517 *A.*2d 166. Although he was *required* to be away from home and "utilize[d] an employer authorized vehicle," he was neither engaged in the "direct performance of duties assigned or directed by the employer" nor "traveling to and from a job site." *N.J.S.A.* 34:15–36. Finally, in *Chisholm–Cohen*, a training technician

employed by the Ocean County Department of Emergency Services was injured in a car accident in a county-owned car. The accident occurred while the employee was traveling home to change her clothes during a break in her working hours. 231 *N.J.Super.* at 349–50, 555 *A.*2d 713. The court explained that that accident involved "'the authorized operation of a vehicle on business authorized by the employer.'" *Id.* at 352, 555 *A.*2d 713 (quoting *N.J.S.A.* 34:15–36). The court denied the employee's claim, reasoning that although the employee was clearly authorized by the County to operate the vehicle, she had failed to prove the second element—that the vehicle was being operated "'on business authorized by the employer.'" *Ibid.* (quoting *N.J.S.A.* 34:15–36).

Although those distinctions in both the special-mission and travel-time exceptions appear niggling, especially to the bereaved or injured, they do appear to be consistent with the legislative purpose of the 1979 amendments: to provide relief from the numerous exceptions to the "going and coming" rule that had evolved through judicial application of the prior statute, while at the same time providing a trade-off for the increased awards for more seriously injured and disabled workers. Judge Gaynor summarized the doctrine for our purposes as follows:

> [T]he travel time criterion is applicable only when the employee's injury is sustained while going to and from a job site distant from the place of employment and the employee is either paid for the time spent in so traveling or is transported in an employer authorized vehicle. The two elements—performance of assigned duties away from the place of employment and either payment for travel time or traveling in an authorized vehicle—are requisite elements for the application of the Act to an injury incurred while traveling to and from work. [*Mahon, supra,* 212 *N.J.Super.* at 34, 513 *A.*2d 367.]

Also, he noted, in a footnote not applicable to that case, that employment under the Act "extends to the time during which an employee is engaged in the authorized operation of a vehicle on business authorized by the employer." *Ibid.* n. 1.

▮ Applying those principles to the facts of this case leads us to reverse the judgment of the Appellate Division. This case

comes to us on a record that allowed the compensation judge to find that petitioner was en route home from his regular place of work. Although the employer had required that petitioner be off the premises, his work day was over and he was in no sense engaged in the "direct performance of duties assigned or directed by the employer." *N.J.S.A.* 34:15–36. He was free to pursue whatever activities he wished with the remainder of the day.

Although an argument is made that petitioner's maintenance of mileage records from the place of employment until he arrived at home in his tractor was required by the employer, there is no evidence that that record-keeping was anything other than a regulatory requirement. The record contains no evidence that he was paid for the travel time. We note, parenthetically, that the travel was not to a distant job site.

The final possible exception—that employed by the Appellate Division—is that an "employee who utilizes an employer authorized vehicle shall commence and terminate with the time spent traveling to and from a job site." *N.J.S.A.* 34:15–36. We do not believe that the Legislature intended the expression "employer authorized vehicle" to cover the employee-owned vehicle that may be used in the employer's business unless on business authorized by the employer or en route to a distant job site. Here, petitioner was not going to or coming from a distant job site nor was he on business authorized by Refrigerated. The example of a real-estate salesperson or an attorney comes to mind. Often those employees are authorized by an employer to use an employee-owned vehicle. The broker or attorney would be covered for an accident only if en route to a distant job site such as a closing of a title and not for the trip from office to home at the end of a routine work day. The result would be the same even if the employee had used the car for the employer's business during the course of the day, for example, to transport clients to a closing. Under those circumstances—using one's own vehicle on the employer's business—

presumably the employer would be responsible only for the accidents that occur in the direct performance of employer-assigned duties.

We have repeatedly emphasized that the policy choices made by the Legislature, including its modification of the "going and coming" rule, reflect a legislative trade-off that " 'would make available additional dollars for benefits to the seriously disabled workers' " while at the same time "contain[ing] the overall cost of workers' compensation." *Perez v. Pantasote, supra,* 95 *N.J.* at 114, 469 *A.*2d 22 (quoting *Joint Statement, supra,* at 1). Those policy choices dictate disallowance of the claim for after-hours travel in the circumstances of this case.

The judgment of the Appellate Division is reversed and the judgment of the Worker's Compensation Court is reinstated.

HANDLER, J., dissenting.

This case concerns the extent of worker's compensation coverage afforded to truck drivers who are required to use their own trucks in their employment. Employees receive worker's compensation for accidents that arise in the course of their employment but not for those that occur while they are going to or coming from work. Distinguishing work-related accidents from commute-related accidents poses few problems when employees work in a factory or at some other defined workplace under the control of an employer. The difficulty arises when the nature of the work takes the employee outside a fixed work place. When, as in this case, the accident occurs while the employee is on the road, compensation depends primarily on whether the employee was involved in work authorized by the employer at the time.

The majority would deny compensation in this case on the reasoning that an accident that occurs while a worker is parking a tractor trailer at an off-site location at the end of a work day does not arise in the course of the driver's employment. Because that approach does not do justice to nature of the work

involved and results in a failure to compensate a work-related injury, I dissent.

## I

George Zelasko drives a tractor trailer for Refrigerated Foods Express (Refrigerated). He owns both the tractor and the refrigerated trailer as a condition of his employment. Zelasko begins each working day by logging in his mileage and the time of day as required by his employer. He then drives the tractor, which he parks at his home, to a parking lot owned by a friend, and attaches the refrigerated trailer. He then makes deliveries between various warehouses and retail supermarkets. At the end of the day Zelasko drives the tractor and trailer back to the parking lot, unhitches the trailer, and proceeds home. At that point he logs out with his time and mileage.

On the day in question Zelasko had made his last delivery of the day. He then drove to a warehouse owned by another company to drop off wooden pallets owned by Refrigerated. After leaving the warehouse he proceeded toward the parking area where he would leave the trailer for the evening. On the way he heard pallets left in the trailer rattling around. He owned the pallets. After finding a safe parking area near his home, climbing into the trailer, and securing the pallets, Zelasko lost his balance and fell out of the trailer, breaking his foot.

The compensation judge concluded that once Zelasko had dropped off the pallets and left the warehouse, he was outside the control of his employer and had finished with work for the day.

> After petitioner left the terminal on Thursday, he was free to work for someone else. He worked for himself. He could take time off or drive any place he wanted to drive. Petitioner chose to drive to a location within 300 feet of his home, which he had a right to do on his own time.

The Appellate Division reversed, emphasizing that parking the tractor trailer was to the direct benefit of Refrigerated and

constituted "the authorized operation of a vehicle on business authorized by the employer."

## II

The critical question is whether Zelasko was at work when he drove from the terminal to the parking lot where he was to leave the trailer. In the peculiar patchwork system of American social insurance, workers receive compensation only for injuries that arise out of and in the course of employment. Prior to 1979 the question of whether an accident had occurred in the course of employment was resolved by reference to the judicially-fashioned "going and coming" rule. The goal of the rule was to preclude worker's compensation coverage for accidents arising during the employee's routine commute to and from work. However, by the 1970s exceptions had largely come to overshadow the rule, as courts allowed recovery for accidents that had only indirect relationships to the employee's work.

In 1979, the Legislature codified the "going and coming" rule, and in doing so rejected many of the exceptions that had come to qualify and limit the effect of the rule. At the same time the Legislature recognized that not all employees work at a defined workplace and thus made provision for off-site accidents. Under the approach of the 1979 legislation, some of the hardest cases arise where workers work on the road, rather than at a specific worksite, or where they use their own vehicle as part of their work. This case involves both situations and thus raises a difficult set of issues.

New Jersey courts first treated the question of when an employee is in the course of his or her employment at the time of an accident in the context of *respondeat superior* cases. In 1918 the Court of Errors and Appeals held that an employer could be held liable for the negligence of an employee who was driving a company car home from work. *Depue v. Salmon Co.*, 92 *N.J.L.* 550, 106 *A.* 379 (1919). The Court emphasized

that the employee had been given the car to use to enable him to reach his place of employment at an earlier hour than he otherwise could. In *Auer v. Sinclair Refining Co.*, 103 *N.J.L.* 372, 376, 137 *A.* 555 (E. & A.1927), the Court extended the analysis in *Depue* to cover employees who used their own automobiles for work purposes. The employee in the case had made his last call and was on his way home to park his car. The Court found that because the employee was authorized to use the auto in his work and was reimbursed for expenses, he was a servant of the company rather than an independent contractor. Similarly, in *Demerest v. Guild*, 114 *N.J.L.* 472, 474, 176 *A.* 558 (E. & A.1935), the Court emphasized the when the employee drove her car home from work and parked it in her garage, she had been acting for the benefit of not only herself but also her company. The Court reasoned that the employer "did not instruct [the employee] to leave the car [in any particular place] ... [but] [n]aturally [she] would keep the car in the least expensive place and this was not objected to by the company." *Id.* at 475, 176 *A.* 558.

In the worker's compensation context, the Court acknowledged a special errand or special-mission exception that later became one of the statutory exceptions. *See O'Brien v. First Camden Nat'l Bank & Trust Co.*, 37 *N.J.* 158, 179 *A.*2d 740 (1962). The employees were deemed to be acting in the course of their employment when they departed from their commutes to perform some activity on behalf of the employer. In *White v. Atlantic City Press*, 64 *N.J.* 128, 313 *A.*2d 197 (1973), the Court held that the employee was covered because he was required to use his own automobile for work-related duties. In *Livingstone v. Abraham & Straus, Inc.*, 111 *N.J.* 89, 543 *A.*2d 45 (1988), the majority characterized those cases as involving situations arising out of and in the course of employment because "the employee, though not on the employer's premises, is directly involved in completing employer-directed tasks." *Id.* at 97, 543 *A.*2d 45.

The cases illustrate a significant distinction between those situations in which the employee is off-premises but nonetheless engaged in employer-related business and those situations in which the employee is going to or coming from work. When the Legislature codified and restricted the exceptions to the "going and coming" rule in 1979, it preserved the distinction between the two situations. As mentioned, it did not establish a blanket rule that only injuries occurring on work premises are covered. Instead, the Legislature allowed recovery for off-premises accidents that arise in the course of employment. The exceptions it allowed closely tracked earlier common-law exceptions designed to address the peculiar risks that befall those whose very work involves off-premises driving.

The specific language used by the Legislature in *N.J.S.A.* 34:15–36 is by any measure relatively convoluted. Indeed it requires several readings before its logic can be ascertained. The statute creates two broad exceptions to the "going and coming" rule. The first is the special-mission exception, applicable when an employee departs from his or her commute to perform an errand or duty for the employer. The second exception applies to employees who are either paid for their travel time to and from a distant job site or who use an employer-authorized vehicle for employer-authorized business. Because the second exception applies to two distinct situations, some courts, as did the court below, characterize the provision as creating two separate exceptions.

The provision reads as follows:

but the employment of employee paid travel time by an employer for time spent traveling to and from a job site or of any employee who utilizes an employer authorized vehicle shall commence and terminate with the time spent traveling to and from a job site or the authorized operation of a vehicle on business authorized by the employer. *N.J.S.A.* 34:15–36.

As noted above, the exception applies to two types of employees: (a) one who is "paid travel time by an employer for time spent traveling to and from a job site," and (b) one who

"utilizes an employer authorized vehicle." For those persons employment is said to "commence and terminate with" either (a) the time spent traveling to and from a job site or (b) the authorized operation of a vehicle on business authorized by the employer. Breaking down the language of the statute in that way illustrates the direct correspondence between the phrases. Those who are paid for traveling to and from a job site are considered "in the course of" their employment during the time they spend traveling to and from the job site. Those who use an employer-authorized vehicle are considered "in the course of" their employment when they are using the vehicle for business authorized by the employer.

Read in that manner the rule is fully consistent with the underlying purposes that animate the "going and coming" rule. Employees are not compensated for accidents that arise during an ordinary commute to work. Where, however, their work requires that they be away from the specific location of their employer, they are compensated so long as they are involved in employment-related work at the time of the accident. The touchstone for determining whether the accident arises in the course of employment is whether it arises out of work for which benefit accrues to the employer.

### III

The majority would appear to endorse the formulation that "employment under the Act 'extends to the time during which an employee is engaged in the authorized operation of a vehicle on business authorized by the employer.'" *Ante* at 338, 608 *A*.2d at 235 (quoting *Mahon v. Reilly's Radio Cabs, Inc.*, 212 *N.J.Super.* 28, 34, n. 1, 513 *A*.2d 367 (App.Div.1986)). Nonetheless, the majority concludes that "[a]lthough the employer required that petitioner be off the premises, his work day was over and he was in no sense engaged in the 'direct performance of duties assigned or directed by the employer.'" *Ibid.* (quoting *N.J.S.A.* 34:15-36). As did the compensation judge, the

majority takes the view that Zelasko "was free to pursue whatever activities he wished" once he had made his last delivery.

As discussed above the exception has two parts: one dealing with the character of the vehicle, the other with the purpose for which it was being used at the time of the accident. In considering the position take by the majority, one must consider each part of the exception in turn.

That the vehicle was owned by Zelasko does not itself exempt accidents arising from its use from compensation. The use of the words "authorized vehicle" rather than "business owned vehicle" are designed to encompass within statutory coverage those vehicle owned by the employee but used in the course of work. That framework is consistent with well-established jurisprudence dealing with accidents arising from the use of employee-owned vehicles. The Court has long emphasized that what matters is not who owns the vehicle but whether the employer pays the expenses of its operation or gains benefit from its use. *See, e.g., Demerest v. Guild, supra* 114 *N.J.L.* 472, 176 *A.* 558 (emphasizing benefit that accrues to employer when employee parks car in her own garage); *Auer v. Sinclair Refining Co., supra,* 103 *N.J.L.* 372, 137 *A.* 555 (petitioner deemed employee based on being authorized to use in his work his own vehicle for employer's benefit).

Given that the tractor-trailer was an employer-authorized vehicle, the remaining question is whether Zelasko was involved in employer-authorized business at the time of the accident. The record is unclear on the question of whether Zelasko is paid for the time he spends parking the trailer at the end of the day or whether he is reimbursed for the travel expenses incurred in doing so. Zelasko's attorney maintains that he is reimbursed for his travel expenses for the time spent parking the trailer and retrieving it the next morning. The record contains evidence that during his entire thirteen-year employment with Refrigerated, Zelasko maintained travel logs recording his mile-

age from the moment he entered the tractor cab in the morning until the time he alighted from it at his home in the evening.

Whether the logs are kept for the purpose of reimbursing Zelasko for his travel expenses or for some other purpose, however, is not determinative. Compensation does not turn on whether the employee is paid for the travel time or is reimbursed for the travel expense. The critical issue is whether the work is employer-authorized business. The conclusion that parking the trailer at the end of the day does not constitute "work," or that if it does, it does not constitute work for which benefit accrues to the employer does not comport with common sense. A refrigerated tractor-trailer is a large cumbersome vehicle. Driving the tractor trailer to the parking lot, unhitching the trailer, and securing its contents involves the expenditure of significant physical and mental energy. When done each working day for thirteen years, that work cannot be written off as simply an activity that Zelasko chooses to do at the end of the day.

The compensation judge was unjustified in assuming that Zelasko was free to go anywhere he wanted after work. When the accident occurred Zelasko was not on his way home. He was driving toward the area where he left the trailer each evening. No evidence suggests that Zelasko uses the trailer for any purpose other than to haul goods for Refrigerated. At the time of the accident Zelasko had already received his next delivery assignment from Refrigerated, and there is no suggestion that he intended to use the truck for any other purpose prior to carrying out that assignment. Nor is there any reason to conclude that in parking the trailer he was motivated by anything other than a desire to complete his assigned tasks for Refrigerated. Zelasko certainly was not free to go about his own business until after he had secured the refrigerated trailer. Prior to that point he was still "working"—as the common understanding suggests—and continued to face the kinds of work-related risks associated with his type of work.

Parking the trailer, the activity in which Zelasko was involved when the accident occurred, is also something that provides palpable and quantifiable benefit to his employer. The expenses of a company involved in wholesale distribution revolve in large part around the costs related to renting and owning space. By not having to provide the space to store trailers used in its distribution activities Refrigerated saves substantial costs associated with purchasing or renting parking areas and securing those areas. In economic terms the arrangement whereby Zelasko parks the trailer effectively shifts part of the cost of doing business from the company to the employee. That Zelasko parks the trailer on his own account provides direct economic benefit for the employer and therefore cannot be written off as an activity unrelated to his work. Moreover, his parking the trailer also benefits the employer because it saves on travel time, allowing Zelasko to drive directly to his next pick up without first driving to the Refrigerated warehouse.

The majority's reasoning not only mischaracterizes the economic and practical nature of the work in the course of which the accident occurred, but also misconstrues the use of the term "authorized" in the statute. The pre–1979 cases indicate that "authorized" does not mean that the employer has ordered the employee to do the specific action. Zelasko's employer need not have ordered him to park the trailer in that specific parking lot. That the employer expected Zelasko to park the trailer and accepted his doing so over a long period of time was sufficient. *See Demerest, supra,* 114 *N.J.L.* at 475, 176 *A.* 558 (holding that employer need not have ordered employee to park car in particular place for parking of car used in course of business to have been authorized.)

The word "authorized" is used in the statute to separate actions that are unauthorized and unrelated to work from actions that employees habitually engage in as part of their work. Although off-premises, at the time of the accident Zelasko was "directly involved in completing employer-directed tasks." *Livingstone, supra,* 111 *N.J.* at 97, 543 *A.*2d 45. In

contrast, if the accident were to have occurred while Zelasko was moonlighting for a second company or moving furniture from one house to another, the work would not be employer-authorized business and there would be no obligation on Refrigerated to compensate.

Cases dealing with the "going and coming" rule often deal with the question of control. The accident arises in the course of work when it arises in a situation under which the employer had control of the employee. The employer has no power to control the employee who has left the factory floor on a lunch break and thus has little or no ability to limit the risks he or she faces. The worker's compensation judge based his decision on that reasoning, concluding that once Zelasko had left the warehouse, he had left the control of his employer. The work of a truck driver, however, should not be viewed through the rubric of employer control over the shop floor. Zelasko has far more independence from his employer than has the worker who operates a machine in a factory. That worker probably chooses what roads to take in reaching his or her destinations, in what order he or she will make deliveries, and when he or she will stop for lunch. Refrigerated exercises control over Zelasko not through direct observation but through the time and mileage logs it requires him to keep. That he was required to be logged in at the time of the accident indicates that given the nature of his employment, he was indeed under the control of his employer. Moreover, his greater independence in choosing how to proceed with his work makes him no more able to bear the risks of workplace accidents than those who work in the factory. *See Renshaw v. United States Pipe and Foundry*, 30 *N.J.* 458, 465, 153 *A.*2d 673 (1959) (worker's-compensation liability designed " 'to shoulder on industry the expense incident to the hazards of industry' ") (quoting *Morris v. Hermann Forwarding Co.*, 18 *N.J.* 195, 197–98, 113 *A.*2d 513 (1955)).

When Zelasko drove to park the trailer in the lot, he was not under the direct supervision of his employer. But that was not because he had left work but because of the nature of his work.

This accident could have occurred after he had made his last delivery but before he had reached the terminal, and then it clearly would have been coverable, even though the employer had exercised the same degree of control. New Jersey courts have long recognized that an employee who drives his or her own vehicle for work purposes does so for the benefit of his or her employer. Nor does the fact that the parking lot is not owned by the employer bar recovery. As the Court indicated in *Livingstone, supra,* property law alone does not determine coverage under the statute. 111 *N.J.* at 101, 543 *A.*2d 45. The work of parking the trailer is authorized not because the employer has given specific instructions about how to do it but because the employer derives direct and substantial benefit from the work.

## IV

Because the accident arose from the use of an employer-authorized vehicle for business authorized by the employer, it arose in the course of employment and should result in compensation for the petitioner. Therefore, I would affirm the Appellate Division judgment.

STEIN, J., joins in this opinion.

*For reversal and reinstatement*—Chief Justice WILENTZ and Justices CLIFFORD, POLLOCK, O'HERN and GARIBALDI—5.

*For affirmance*—Justices HANDLER and STEIN—2.