694 A.2d 586

FELIPE RAMOS, PETITIONER–RESPONDENT, v. M & F FASH-
IONS, INC., RESPONDENT–RESPONDENT, v. SECOND IN-
JURY FUND, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 15, 1997—Decided June 11, 1997.

Before Judges DREIER, D'ANNUNZIO and VILLANUEVA.

*Linda Schober*, Deputy Attorney General, argued the cause for appellant (*Peter Verniero*, Attorney General of New Jersey, attor-

ney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Ms. Schober*, on the brief).

*Michael J. Murphy, Jr.*, argued the cause for petitioner-respondent (*Freeman & Bass*, attorneys; *Mr. Murphy*, of counsel and on the brief).

The opinion of the court was delivered by

VILLANUEVA, J.A.D. (retired and temporarily assigned on recall).

The Second Injury Fund ("SIF") appeals from the final decision of the Workers' Compensation Division which concluded that the accident was compensable and petitioner, Felipe Ramos, was totally and permanently disabled, with 66-2/3% fault apportioned to M & F Fashions, Inc. ("M & F"), and the balance of 33-1/3% apportioned to appellant SIF. We reverse.

Petitioner was hired as a presser by M & F in approximately 1986. He worked forty hours per week, from 8:00 a.m. to 4:00 p.m., at a rate of $5.00 per hour. On May 13, 1988, petitioner arrived at work at 7:00 a.m., approximately one hour before the workplace opened and he was scheduled to begin work. Petitioner indicated that he arrived at 7:00 a.m. every day and would wait for his employer to arrive at 8:00 a.m. to open the fourth floor facility. Petitioner was able to gain entrance to the first floor of the building when another tenant opened the outside door.

When petitioner approached the elevator on that morning, he noticed that the door was slightly ajar, about one and one-half feet. Petitioner testified that the interior light was off, and after he pushed the door open and stepped in, he fell into the elevator shaft. At his deposition, petitioner indicated that he backed into the elevator, but during his trial testimony he testified that he entered face forward. Petitioner sustained injuries to his left wrist, back, neck, head and left hip and pelvis, and underwent corrective surgery for the wrist injury.

The elevator was located on the first floor of a five-story building, and was used by other tenants as well as M & F. M & F was one of several tenants located on the fourth floor of the multi-tenant building.

Petitioner filed a Workers' Compensation claim alleging various orthopedic, neurologic and neuropsychiatric injuries, alleging total and permanent disability as a result of the injuries suffered in the May 13, 1988 accident, coupled with a pre-existing injury to his left hand.

The Amended Claim Petition also indicated that M & F appeared to not have Workers' Compensation insurance. M & F failed to answer the Claim Petition or make any appearances in court during the course of these proceedings. Additionally, petitioner filed a liability lawsuit against the owner of the building, and received a $100,000 settlement on those claims.

The claim against respondents M & F and SIF was initially bifurcated pursuant to *N.J.A.C.* 12:235–7.1. Petitioner, accompanied by counsel, testified before the Judge of Compensation on four dates. Then, on May 10, 1995, the judge, due to SIF's prior absence from the proceedings, requested that the SIF deputy participate in cross-examination of petitioner. Medical experts testified on three subsequent dates.

Petitioner testified that there was also a stairwell on the first floor which went upstairs, but that he mostly used the freight elevator to reach M & F. The elevator was located about twenty feet down a hallway from the entrance to M & F.

According to petitioner, passengers in the building used the freight elevator for transport, and he denied seeing any signs forbidding usage of the freight elevator for passenger use. Petitioner also denied knowing of the existence of a passenger elevator in the building. Petitioner indicated that he would sometimes use the freight elevator to transport garments for M & F. He also testified that his colleagues and bosses used the stairs to get to M & F.

After hearing testimony from experts on behalf of petitioner and SIF, the judge concluded that the accident was compensable and petitioner totally and permanently disabled, with 66–2/3% fault apportioned to respondent M & F, and the balance of 33–1/3% apportioned to SIF.

SIF filed a motion for reconsideration asserting that petitioner had failed to prove his employment as directed by the judge during his initial testimony, by submission of pay stubs, W–2 forms, or other income or tax records and, therefore, could not be entitled to any disability payments based on said employment. Second, SIF also requested a stay of the payment of any benefits pursuant to the motion and any subsequent appeal. The motion was denied.

SIF appeals the compensation judge's determination on the ground that petitioner was not injured in the course of his employment, and that his injuries did not render him totally and permanently disabled.

■ When the Appellate Division reviews an administrative agency decision, the scope of its inquiry is limited to a determination of " 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering 'the proofs as a whole.' " *Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965) (quoting *State v. Johnson*, 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964)).

The first issue raised by this appeal is whether, at the time of the accident, petitioner was acting within the scope of his employment when he was injured by falling into the elevator shaft. SIF urges that under *N.J.S.A.* 34:15–36 petitioner cannot receive Workers' Compensation benefits because the freight elevator was not under the control of M & F. As such, petitioner is precluded from recovering under the Workers' Compensation Act ("Act"), *N.J.S.A.* 34:15–1 to –69.

New Jersey provides injured employees an avenue for economic recovery as follows:

When personal injury is caused to an employee by *accident arising out of and in the course of his employment*, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause, he shall receive compensation therefor from his employer, provided the employee was himself not willfully negligent at the time of receiving such injury, and the question of whether the employee was willfully negligent shall be one of fact to be submitted to the jury, subject to the usual superintending powers of a court to set aside a verdict rendered contrary to the evidence.

[*N.J.S.A.* 34:15-1 (emphasis supplied).]

The requirements of two elements, namely "arising out of" and "in the course of" employment, are basic to the establishment of compensability. 38 *New Jersey Practice, Workers' Compensation Law* Sec.8.1 at 227 (Jon L. Gelman) (rev.2d ed.1994). Specifically,

"Arising out of" is related to the origin or cause of the accident, so that the risk of a particular accident might have been contemplated by a reasonable person when entering the particular employment as incidental to it. The term "in the course of" is descriptive of the circumstances under which the accident takes place.

[*Id.* at 227–28.]

SIF argues that petitioner, having failed to establish that the injury sustained occurred within the requisite parameters, must look to other forms of relief (which he did).

The determination whether an employee was acting within the scope of his employment at the time of an accident depends on the particular facts as examined in light of the purpose of lawmakers. *O'Brien v. First Camden Nat. Bank & Trust Co.*, 37 *N.J.* 158, 179 *A.*2d 740 (1962). The words "in the course of" have reference to time, place and circumstances under which the accident took place, *Stevens v. Essex Fells Country Club*, 136 *N.J.L.* 656, 658, 57 *A.*2d 469 (Sup.Ct.1948), and the courts must engage in a flexible case-by-case analysis in resolving such "in the course of employment" issues. *Livingstone v. Abraham & Straus, Inc.*, 111 *N.J.* 89, 104, 543 *A.*2d 45 (1988).

Prior to the Act's 1979 amendment, the statute did not provide a definition of the term "employment." *Zelasko v. Refrigerated Food Exp.*, 128 *N.J.* 329, 334, 608 *A.*2d 231 (1992). The "sweeping generality of the statutory terms" of 'arising out of and in the course of employment' necessitated a means of distinguishing between "those accidental injuries which may fairly be said to

have some work connection and those which may fairly be said to be unrelated to the employment." *Hornyak v. The Great Atlantic & Pacific Tea Co.*, 63 *N.J.* 99, 102, 305 *A.2d* 65 (1973). As a result, the courts crafted the so-called "going and coming" rule, which precluded employees from recovering compensation for injuries incurred while traveling to and from work. *Hammond v. The Great Atlantic & Pacific Tea Co.*, 56 *N.J.* 7, 11, 264 *A.2d* 204 (1970). However, the rule soon became riddled with exceptions to the degree "that they ... overshadowed the basic rule." *Watson v. Nassau Inn*, 74 *N.J.* 155, 159, 376 *A.2d* 1215 (1977) (citations omitted).

The Act was amended in 1979, in part, to alleviate the effects of the numerous exceptions to the "going and coming" rule " 'by defining and limiting the scope of employment.' " *Zelasko, supra,* 128 *N.J.* at 335, 608 *A.2d* 231 (quoting Senate Labor, Indus. and Professions Comm., Joint Statement to Substitute for S.802 & A.840 at 2 (Nov. 13, 1979) (*Joint Statement*)). We subsequently remarked that the true benefit afforded by the legislative amendment was "not relief from the 'going and coming rule,' but rather from the numerous exceptions which have evolved to that rule." *Ward v. Davidowitz*, 191 *N.J.Super.* 518, 522, 468 *A.2d* 250 (App.Div.1983). The two remaining exceptions to the going and coming rule, namely the "special mission" and "travel-time" exception, are inapt to the instant circumstances. *See Zelasko, supra,* 128 *N.J.* at 336, 608 *A.2d* 231.

*N.J.S.A.* 34:15–36 defines employment as follows:

*Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work* and shall terminate when the employee leaves the employer's place of employment, *excluding areas not under the control of the employer;* provided, however, when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer; ...

[*N.J.S.A.* 34:15–36 (emphasis supplied).]

■ A critical issue in the instant matter thus becomes whether petitioner was injured in an area under the employer's control, as our Supreme Court has interpreted the statute "as not allowing

compensation for accidents occurring in areas outside of the employer's control, as when the employee is going to and coming from work." *Zelasko, supra,* 128 *N.J.* at 336, 608 *A.*2d 231. Notably, the word "control", as used in *N.J.S.A.* 34:15–36, is not to be interpreted in the "formal property law sense," *Livingstone, supra,* 111 *N.J.* at 105, 543 *A.*2d 45, but rather in the " 'common-sense' notion that the term implies simply 'use by the employer in the conduct of his business.' " *Id.* at 103, 543 *A.*2d 45 (quoting *Cressey v. Campus Chefs, Div. of CVI Service, Inc.,* 204 *N.J.Super.* 337, 343, 498 *A.*2d 1274 (App.Div.1985)).

■ While it is true that in *Livingstone* the fact that the employer neither owned, maintained, or had exclusive use of the area in which the claimant was injured was irrelevant to the finding of compensability, *Livingstone, supra,* 111 *N.J.* at 104, 543 *A.*2d 45, the circumstances are distinguishable from the instant case. The employer in *Livingstone* not only directed its employees to park in a specific area of a common parking lot, but had, in fact, effectively appropriated the same. Although the employer lacked ownership of the property in a legal sense, "it possessed, factually, almost the identical attributes of control, which are sufficient to satisfy the principles underlying the statute." *Id.* at 105, 543 *A.*2d 45. In sum, the *Livingstone* Court concluded that the area designated by the employer for its employees usage was "effectively equivalent to an employer-owned lot." *Id.* at 104–05, 543 *A.*2d 45.

Petitioner bears the burden of establishing that M & F exercised control over the area where he was injured. The record reveals that he has failed to demonstrate such fact. The course of entry taken by petitioner, to use the freight elevator to gain access to the fourth floor, was selected pursuant to petitioner's independent choice. M & F did not mandate that its employees use the freight elevator to gain entrance to the factory, thus petitioner's accident was not incident to any action on M & F's part to exercise control of employee's off-premises freedom. *See Livingstone v.*

*Abraham & Straus,* 216 *N.J.Super.* 685, 692, 524 *A.*2d 876 (App. Div.1987), *aff'd,* 111 *N.J.* 89, 543 *A.*2d 45 (1988).

Nevertheless, petitioner contends that the instant circumstances "are remarkably similar" to the circumstances in *Cressey v. Campus Chefs, Div. of CVI Service, Inc.,* 204 *N.J.Super.* 337, 498 *A.*2d 1274 (App.Div.1985), wherein this court determined that the injury suffered by the claimant had occurred within the scope of employment. In *Cressey* the employee's route to work posed a "special hazard" because the only egress available to the company employees often required them to bypass steps and a ramp, and instead take a path over a loading dock, to a retaining wall, to reach the parking lot. *Id.* at 344–45, 498 *A.*2d 1274. On the date of the claimant's injury, the ramp was flooded and impassable due, at least in part, to the fault of the employer. As the court stated, "[claimant] cannot be denied compensation because the hazard incident to her employment was inches beyond the employer's place of business. She has a right to obtain, as part of her employment, safe egress from the premises." *Id.* at 344, 498 *A.*2d 1274.

Petitioner asserts that the injury he suffered also occurred as a result of a "hazardous" condition. Petitioner contends, in interpreting *Cressey,* that because M & F utilized the freight elevator for the transport of fabrics and goods, the elevator was under the "control" of M & F. Indeed, we interpreted the phrase "excluding areas not under the control of the employer," *N.J.S.A.* 34:15–36, to imply those areas not used by the employer in the conduct of his business. *Cressey, supra,* 204 *N.J.Super.* at 343, 498 *A.*2d 1274. However, a careful reading of the case suggests that the holding of compensability rested on the court's finding that the employer had in fact created a risk that was incident to the claimant's employment. *Id.* at 344, 498 *A.*2d 1274.

Further, neither the Appellate Division nor the Supreme Court, in cases subject to *Cressey,* has adopted the statutory interpretation that use of an area in the course of business equates to control in cases subsequent to *Cressey. See Livingstone v. Abra-*

*ham & Straus, Inc.,* 111 *N.J.* 89, 543 *A.*2d 45 (1988) (workers' compensation awarded where injury occurred in parking lot over which employer exercised *de facto* control by directing its employees where to park); *Serrano v. Apple Container,* 236 *N.J.Super.* 216, 565 *A.*2d 417 (App.Div.1989), *certif. den.,* 121 *N.J.* 591, 583 *A.*2d 298 (1990) (denial of workers' compensation benefits to employee who suffered injuries in parking lot accident because accident occurred in the lot adjacent to employer's lot, and though employees had a legal right to use in common the lot as an alternate means of access, employer did not exercise control over the area).

In fact, in *Novis v. Rosenbluth Travel,* 138 *N.J.* 92, 95, 649 *A.*2d 69 (1994), our Supreme Court specifically rejected the very argument of "use" equating to "control" urged by petitioner. The Court noted that the Appellate Division had erroneously deemed the employer's use of a parking lot in the conduct of its business as satisfying the requisite control element of *N.J.S.A.* 34:15–36. *Ibid.* In distinguishing the facts from its earlier holding in *Livingstone,* the Court concluded that the employer in *Novis* "simply shared the lot with the other tenants," and such a nexus could not support a finding of control and compensation. *Id.* at 96, 649 *A.*2d 69.

Further, M & F was one of many tenants on the floor in the building, and according to petitioner's own testimony, the freight elevator was a common area. The elevator "was beyond [the] employer's control in any relevant sense" when this accident occurred. *See Serrano, supra,* 236 *N.J.Super.* at 221, 565 *A.*2d 417; *N.J. Mfrs. Ins. v. Public Service,* 234 *N.J.Super.* 116, 120, 560 *A.*2d 117 (App.Div.), *certif. den.,* 118 *N.J.* 178, 570 *A.*2d 948 (1989); *Manole v. Carvellas,* 229 *N.J.Super.* 138, 143, 550 *A.*2d 1278 (App.Div.1988).

"It is time to recognize that the 'going and coming rule' has come and gone. It was not resurrected ... by the 'spirit of *Livingstone.*'" *Serrano, supra,* 236 *N.J.Super.* at 221, 565 *A.*2d 417. "The clear language of the definition in the statute is keyed

to the elimination of an employer's responsibility for accidents occurring in areas not under the employer's control *unless* the employee is required by the employer to be away from the employer's place of employment." *Ward, supra,* 191 *N.J.Super.* at 523, 468 *A.*2d 250. Herein, petitioner was not required by M & F to confront any "special hazard" by taking the freight elevator to the fourth floor facility. In fact, petitioner testified that his colleagues and bosses used the stairs to get to M & F. An employee who has undertaken to reach an employer's premises by an unauthorized route, prior to the opening of the employer's premises, is not "in the course of employment."

Moreover, petitioner's argument fails for another reason. Petitioner concedes that the accident occurred nearly one hour before he was scheduled to arrive for work. He indicated that he would customarily arrive at 7:00 a.m. despite the fact that the building was locked, and he had no access to M & F until his employer opened the premises at 8:00 a.m. As indicated by *N.J.S.A.* 34:15-36, employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work. By petitioner's own admission, when he arrived at 7:00 a.m. he would just "sit and wait," and have "a cup of coffee or maybe smoke a cigarette" until the employer arrived to open the business at 8:00 a.m. On the facts presented, petitioner's presence at or in the building on the morning of the accident cannot be considered as having "reported to work" and, therefore, the accident did not "[arise] out of and in the course of his employment." *N.J.S.A.* 34:15-1.

Finally, SIF also argues that petitioner should be denied compensation on the basis of his action in entering the elevator. The Act provides for compensation "provided the employee was himself *not willfully negligent at the time of receiving such injury.*" *N.J.S.A.* 34:15-1 (emphasis provided). We need not address this issue.

Reversed.